THOMAS MOODY V. CLARA ARTHUR, *et al.*

1. FINDINGS AND VERDICT; *Evidence not Preserved.* Unless it clearly appears that all the testimony given on the trial is preserved in the record, this court cannot set aside the verdict of a jury or the finding of a court on the ground that it is not supported by the evidence.

2. ———— Where the record reads that "the plaintiff, to maintain the issues on his part, offered testimony as follows, to-wit," then gives certain testimony, and adds, "Here the plaintiff rests," shows the same as to defendant's testimony, but omits such statements as to testimony in reply, of which the record contains some, and contains no affirmative statement that all the testimony is preserved in the record, and no other matter or statement tending to show such to be the fact, *held,* that it does not appear that all the testimony on the trial is in the record and before us for consideration.

3. PLEADING; PETITION; *Objection as to Sufficiency.* An objection to a pleading, that it does not state facts sufficient to constitute a cause of action, presented for the first time in this court, is good only when there is a total failure to allege some matter essential to the relief sought, and is not good when the allegations are simply indefinite, or statements of legal conclusion.

4. ———— *General Averments, When Sufficient.* Where a party, in attempting to allege a valid preëmption of a tract of land in this state, alleges that the land was, at a specified date, open to preëmption, that he was a citizen of the United States, a resident of Kansas, and entitled to a preëmption right to said tract; that he did, at the given date, in strict conformity to the acts of congress thereon, preëmpt said lands at the proper land office, make full payment therefor, and receive a certificate of purchase duly executed by the proper officers; *Held,* That these allegations were sufficient to show a legal preëmption as against an objection (raised for the first time in this court,) that it was not stated that the party was the head of a family, an inhabitant of the tract, or had in person made a settlement and erected a dwelling-house thereon prior to the time the land was applied for.

5. ———— *Statement Showing Title held in Trust.* Where after allegations of a valid purchase, as indicated in the above paragraph, the pleading also alleges that of all said facts the opposite party had full knowledge, and that more than a year thereafter in some manner and by some means to him unknown such opposite party

obtained a certificate of purchase and a patent for said tract, and that his so doing was a violation of the laws of the United States and of the rights already vested in the first party, *held*, that the pleading (as against any objection raised for the first time in this court,) contained a sufficient showing of a full equitable title in the one party, and a naked legal title wrongfully obtained by the other, and held by him in trust for the first party.

6. PRACTICE; *General Findings.* Where there has been no demand for special findings, and the court finds generally that all the allegations of the pleadings of one party are true, such general finding will support a decree in favor of that party, although the general finding is followed by certain special findings which of themselves alone may not be sufficient to support the decree.

7. ACTION TO QUIET TITLE; *Possession; Improvements.* In a case involving simply the quieting of a title, and where no judgment for the possession is entered, no question can be raised as to improvements under the occupying-claimant act.

### *Error from Johnson District Court.*

ACTION brought by *Moody* to quiet his title to the W.$\frac{1}{2}$ of N.W.$\frac{1}{4}$ of section 31, township 12, range 24 east, in Johnson county. He claimed said land by virtue of a patent issued August 1st 1860, to one Daniel Wisely, and through mesne conveyances from the heirs of said Wisely and others to himself. His action was against *Clara Arthur, James M. Arthur,* and *Fisher Hamilton,* heirs of Susan Arthur, deceased, and he alleged that said defendants claimed title to said premises adverse to the rights and title of the plaintiff. The defendants answered and filed a cross-bill, claiming therein the equitable title to said land by virtue of a preemption certificate, issued by the register of the land-office at Lecompton, Kansas Territory, on the 27th of April 1858, to one Thomas Taylor, and by a deed to said Taylor and wife to Susan Arthur, the ancestor of defendants, which deed is dated October 14th 1858, and recorded in the office of the register of deeds of said county April 5th 1864. Trial at the November Term 1873 of the district court. Finding and judgment in favor of the defendants, and the plaintiff brings the case here on error.

*Holmes & Dean,* for plaintiff:

1. It is a presumption of law, that the patent to Wisely passed the whole title to the land in controversy. The patent itself is *prima facie* evidence that all the incipient steps had been regularly taken, authorizing the issuing of the same. 9 Cranch, 87; 3 Peters, 320; 6 Peters, 328; 13 Peters, 436; 19 Mich. 56. And before the defendants will be permitted to call in question the proceedings through which the patent issued to Wisely, they must allege in their cross-bill that Taylor possessed all the qualifications, and complied with all the conditions which the law prescribes authorizing him to preëmpt. This they have failed to do. 40 Cal. 373; 24 Cal. 630; 27 Cal. 483. The cross-bill should affirmatively show that Taylor had a right to preëmpt the land in question. It should appear therein, (1st,) that he was the head of a family, or a single man over the age of twenty-one years; (2d,) a citizen of the United States, or that he had filed his declaration of intention to become a citizen according to law; (3d,) that he was an inhabitant on the tract sought to be entered, (4th,) upon which *in person* he had made a settlement and erected a dwelling-house since the first of June 1840, and prior to the time when the land was applied for — the Indian title having been extinguished and the land surveyed. The bill alleges only that said Taylor was a citizen of the United States and a resident of the territory of Kansas, and failed, as we think, to state any cause of action in their cross-bill, and the same is wholly insufficient.

2. Defendants' cross-bill professes to be a proceeding in equity, but there is nothing alleged therein entitling them to the relief asked for, much less showing themselves worthy of it by their evidence. If they rely on fraud or imposition, they must specifically plead it, setting out the facts which constitute the fraud or imposition. Again, if they rely upon a trust, the facts which constitute the trust must be pleaded. Unless some question of fraud, imposition, or trust intervenes, a state court will not take cognizance of the case.

40 Cal. 166, 273; 54 Ill. 48; 45 Miss. 106; 19 Wallace, 646. The defendants allege that "in violation of the laws of the United States," and "in violation of the rights of said Taylor," and those claiming under him, Wisely obtained his patent. These are mere conclusions of law. It does not appear that it was by any act of fraud on the part of Wisely that Taylor was prevented from getting a patent to the land in question. 12 Minn. 236; 19 Mich. 56. The allegation that Wisely's patent was issued without the knowledge or consent of Taylor, or those claiming under him, avails nothing. In cases arising under conflicting entries of government land, the doctrine of notice is not recognized. 37 Ill. 32; 26 Iowa, 493; 16 Ark. 440; 7 Minn. 450.

3. We admit that this court rightfully regards with great disfavor questions raised before it for the first time as to the sufficiency of the petition, or cross-bill. But we take it for granted, where a party has procured a judgment or decree in his favor, when he shows by his own declaration to be entitled to none whatever, or when he obtains a judgment or decree which is manifestly wrong and unjust, that this court will not affirm it simply because no proper objection was made to it in the inferior court. In the case at bar, after the lapse of many years from the issuing of a patent, and the property therein described had been greatly improved in value, these defendants come into court and seek to attack it without pretending to show that they or those under whom they claim were injured by any fraudulent act on the part of the patentee, or that the patentee was guilty of any fraud whatever, or that any privity existed between him and Wisely, or that Taylor had ever performed the obligations and requirements of a law whose benefits he invokes. 8 Kas. 380, 390.

4. It may be fairly assumed that the record purports to contain all the evidence. The recitals in the record are equivalent to a statement that certain evidence, which is set out in full, was offered and received, and that the parties introduced no more, but ceased at that point. If this be true, then the record contains no evidence to prove that Taylor

possessed the qualifications or performed the conditions entitling him to preëmpt; that any fraud or imposition was practiced by Wisely on Taylor; that any privity existed between Wisely and Taylor which authorized the court to find that the former was the trustee in equity for the latter; that the plaintiff purchased with a notice of the claims of Taylor and those succeeding to his rights to the land in suit. On the contrary, it appears that, long before he purchased, Taylor's certificate had been canceled; that he paid value for the land, had taken possession of the same, and had made valuable improvements thereon. And the court erred in allowing defendants, after they had rested, and plaintiff had closed in chief and in rebuttal, to introduce Taylor to show that he had no notice of the cancellation of his certificate.

*Devenney & Green,* for defendants:

1. The "case made" does not contain *all* the testimony — a great portion being omitted — hence, this court will not review the facts. Nor does the record *purport* to contain all the evidence. It is well settled, this is fatal to a request to review the facts. It is also well settled, that the court below having sat as a jury, he being the judge of the facts and his finding being general, and there being some evidence to support the finding, this court ought not review the facts.

2. The plaintiff cannot now for the first time and in a reviewing court, raise the question, whether defendant's answer or cross-bill contains facts sufficient to constitute a defense or for affirmative relief, as against the cause of action stated in plaintiff's petition. 10 Kas. 266; 11 Kas. 617.

3. Where a person has acquired the legal title to that which another has a better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title. This doctrine is applicable to a second preemptor who has obtained a patent over the first preëmptor without legal authority on the part of the ministerial officers of the general government. 4 Wall. 232; 2 Black, 554; 6 Wall. 418; 16 Mo. 543; 14 Kas. 259. The "certificate of

purchase" issued to Taylor, gave to him a "vested right" in and to the lands, and is *prima facie* evidence that he held the first and paramount equity to the land. 31 Cal. 264; *Macklot v. Dubroil,* 9 Mo. 473; 36 Iowa, 207. It was not necessary for defendants to allege or prove *fraud* in Wisely in order to recover on their cross-bill, as they could stand alone on the fact of Taylor's *purchase.* 7 Ala. 594; 28 Ill. 528; 7 Sm. & Marshall, 694; 10 Ohio St. 93; 2 Wallace, 535; 9 Iowa, 586. But we did prove it, without objection, and we are entitled to the benefit of it, as though we had pleaded it. 57 N. Y. 274.

If it appear on the face of the patent, or from the evidence, that the patent was issued in a case not authorized by law, the patent is inoperative and void, and may be assailed collaterally. 38 Cal. 80; 12 Ill. 317, 334.

The plaintiff endeavors to rebut our equities by showing attempts of the land officers to *cancel* Taylor's entry or "certificate of purchase;" and it may be *inferred* from certain letters (read in evidence by plaintiff, over objections of defendants,) that there had been a *contest* in the Lecompton land-office, between Taylor and Wisely, but, if any such attempts were made or proceedings had thereto, the "case made" discloses that they were purely *ex parte.* No "notice" to Taylor — no day in court — no opportunity to appeal from any decision that those officers might make in the premises. A judicial decree would not be binding on Taylor in such case — it would be an absolute nullity; and so, for a much stronger reason, is the decision of a mere ministerial officer.

Taylor had power to sell and convey, although he had not received a patent; and a sale and conveyance to a *bona fide* purchaser by one holding a "certificate of purchase," is protected by the very words of the preëmption law. 1 Brightly Digest, 474, § 86; 2 Minn. 168; 6 Kas. 112, 122; 33 Iowa, 374; 12 Kas. 284; 13 Wall. 296.

The opinion of the court was delivered by

BREWER, J.: This was an action to quiet title. Plaintiff alleged title and possession, and that defendants claimed title.

Defendants in their answer, and by way of cross-bill, alleged
title in themselves, that plaintiff claimed title, but that such
title was without foundation, and prayed that their title might
be quieted. A decree was entered in favor of the defendants.
To reverse this decree plaintiff comes to this court.

There are two principal questions before us on the record.
Does the answer state a cause of action in favor of the de-
fendants, and against the plaintiff? Do the facts as found,
sustain the decree? We do not think the question of the
sufficiency of the evidence to support the findings
is presented by the record, for the reason that it
does not appear that all the evidence is preserved.
There is no affirmative statement that the record contains all
the evidence. Perhaps that is not always necessary. Fol-
lowing certain testimony offered by the plaintiff, is the state-
ment, "Plaintiff then rested." A similar statement follows
testimony offered by the defendants. Then comes testimony
of plaintiff, given in answer to the testimony of defendants
in support of their cause of action, followed by a like state-
ment. After this appears testimony of defendants in reply,
but without any similar closing statement. Each party's
testimony opens with a statement that he "offered testimony
as follows, to-wit." Now, whatever might be the legitimate
inference, if the defendants' reply-testimony had been followed
by a statement that, "here the defendants rested," or any
statement clearly showing that at such point the introduction
of testimony ceased, without any such statement it is clear
that there is nothing upon which to found an assertion that
all the testimony is given. Much other testimony might
have been given, making clear and plain the very matters
which plaintiff's counsel say are not proved, and still not a
statement in the record be untrue in letter or spirit. We pass
therefore to the first question.

Does the answer of defendants state a cause of action in
their favor and against the plaintiff? And here
it may be remarked, that no objection to the suf-
ficiency of the answer was raised in the court below. The

*(margin note: 1. Where record does not contain all the evidence.)*

*(margin note: 3. Petition— objection— sufficiency.)*

28 —16 KAS.

parties tried the case as though defendants had stated a good cause of action against plaintiff. In this court, for the first time, is any question made as to its sufficiency. In such a case the objection is good only when there is a total failure to allege some matter essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite, or statements of conclusions of law: *Laithe v. McDonald*, 7 Kas. 254; *Mitchell v. Milhoan*, 11 Kas. 617. Turning to the pleadings, we find that the answer alleges, in that defense which is in the nature of a cross-bill, or counterclaim, that on April 27th 1858, and for a long time prior thereto, the land in controversy was a part of the public lands and open to settlement and preëmption at the land-office at Lecompton; that Thomas Taylor was a citizen of the United States, a resident of Kansas Territory, and entitled to a preëmption-right to said lands; that he did upon that day, in strict conformity to the acts of congress thereon, preëmpt said lands at said land-office, pay the full amount ($210) therefor, and receive a certificate of purchase, entry, and preëmption, duly signed and executed by the proper officers, of all of which facts Daniel Wisely, his heirs, grantees, and the plaintiff, had due and legal notice; that said Taylor's title, by certain conveyances, describing them, is vested in defendants; that after such preëmption and purchase, and on June 20th 1859, Daniel Wisely, by some means and in some manner unknown to the said Taylor, or to these defendants, and without the assent, knowledge, consent or notice of his so doing, obtained a pretended certificate of preëmption or purchase from said land-office, and afterward, and on August 1st 1860, a patent for said lands; that the issue and delivery of said certificate and patent to said Wisely were in violation of the laws of the United States, in violation of the rights of said Thomas Taylor, and these defendants, and void as against them, and by said certificate and patent no valid legal or equitable title was conveyed to said Wisely, and that said Wisely's claim had passed to the plaintiff. This was followed by a prayer for a

*4. General averments, when sufficient.*

decree quieting title and for possession of the lands. Upon this answer counsel for plaintiff claim, that "The cross-bill should affirmatively show that Taylor had a right to preëmpt the land in question. It should appear therein, (1st,) that he was the head of a family, or a single man over the age of twenty-one years, (2d,) a citizen of the United States, or that he had filed his declaration of intention to become a citizen according to law, (3d,) that he was an inhabitant on the tract sought to be entered, (4th,) upon which *in person* he had made a settlement and erected a dwelling-house since the first of June 1840, and prior to the time when the land was applied for—the Indian title having been extinguished, and the land surveyed." Perhaps all these matters are essential to give a right to preëmpt; and if objection had been raised at the proper time, perhaps the court would have been compelled to sustain it. But it is alleged that he was *entitled* to a preemption-right to said lands, and that he did preëmpt them in strict conformity to the requirements of the acts of congress thereon. Now, this as a general allegation includes and covers all those specific statements; and if parties are content to try their case upon such general allegation, they waive all objection to it.

Again, it is claimed by counsel that the allegations of the answer show no fraud, imposition, or trust, and that unless some of these appear, a state court will not take cognizance 5. Allegations   of the case; that the allegations are, that the
showing title
held in trust.   issue of the certificate and patent were in violation of the laws of the United States, and of the rights of Taylor—without showing how or in what respect they were so in violation. To this it may be replied, that the allegations show a valid preëmption and purchase by Taylor, that of all this Wisely had full knowledge, that more than a year thereafter in some manner and by some means to the defendants unknown Wisely obtained a certificate of purchase and patent, and that his so doing was a violation of the laws of the United States and of the rights of Taylor and his grantees. Does not this disclose a trust? Does it not show a complete

equitable title in Taylor, and that Wisely by some illegal means had acquired the legal title? Is not the legal title then held in trust for the equitable? It is true, the precise steps by which this legal title was acquired, are not shown, and the pleading could have been more full and specific; but still the fact is alleged, that it was acquired after the vesting of a complete equitable title in Taylor, and by some illegal means. This is now sufficient. It shows the equity in one person, the legal title in another, obtained illegally, and with full knowledge of the equity. In *Stark v. Starrs*, 6 Wallace, 419, it is said to be the well-settled doctrine, "that where one party has acquired the legal title to property to which another has a better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title." See also, *Garland v. Wynn*, 20 How. (U. S.) 6; *Hughes v. U. S.*, 11 How. 568, and 4 Wall. 232; *Lindsey v. Hawes*, 2 Black, 554. These are all cases of contested titles; and in the last three cases a prior certificate prevailed over a subsequent patent. Counsel contends, that "It is a presumption of law that the patent to Wisely passed the whole title to the land in controversy. The patent itself is *prima facie* evidence that all the incipient steps had been regularly taken, authorizing the issuing of the same." This doubtless is correct; and it is a proposition equally correct when applied to the preëmption certificate to Taylor. That is *prima facie* evidence that all prior steps had been regularly taken, and that Taylor had acquired the full equitable title. The *prima facie* evidence of either may be overthrown by other testimony; but in the absence of any other testimony the title which is prior in time is the stronger in right. In *Carroll v. Safford*, 3 How. 441, the court uses this plain language, quoted in the case of *Stone v. Young*, 5 Kas. 232: "So far as the rights of the purchaser are concerned, they are protected under the patent-certificate as fully as under the patent. Suppose the officers of the government had sold a tract of land, received the purchase-money, and issued a patent-certificate: can it be contended that they could sell it again, and

convey a good title? They could no more do this than they could sell land a second time which had been previously patented." It seems to us therefore, that as against any objection that can now be raised the answer must be held sufficient to sustain a decree for affirmative relief.

This really disposes of the case, for in respect to the second question, it may be said that no special findings of fact were demanded, and that while the court does find specially certain facts, it prefaces them with a general finding, that "the allegations, all and singular, contained in the answer of the said defendants are true"—so that, whether the facts specially mentioned in the findings are of themselves sufficient to support the decree, is practically immaterial, the court having covered all with a general finding.

*6. General findings.*

So far as the matter of improvements is concerned, that cannot be inquired into in this case. No judgment for possession was rendered, but only a decree quieting title. Whenever in an action of ejectment judgment is rendered for possession, the question of improvements under the occupying-claimant act will properly come up for decision.

*7. Action to quiet title.*

The judgment will be affirmed.

It is understood that the case of the same plaintiff against Alexander Brown is similar, and the same judgment will there be entered.

All the Justices concurring.