Ferguson v. Willig.

WINFIELD S. FERGUSON v. FREDERICK WILLIG.

No. 8905.

1. RESCISSION OF CONTRACT — *alleged misrepresentations denied in action for, burden of proof on plaintiff.* In an action to rescind a contract exchanging a farm and some personal property thereon for city property, the plaintiff alleged that the defendant made false and fraudulent statements and representations to him as to the amount and character of a mortgage upon the property conveyed to plaintiff, and that he did not know of the existence of such mortgage, which was then a matter of public record and the existence of which was shown by an abstract of title furnished by the defendant to plaintiff when the exchange was made, until shortly before the action was brought. *Held*, that the ·burden of showing the deception and that he was without knowledge of the mortgage rested upon the plaintiff.

2. APPELLATE PROCEDURE — *unless record ·affirmatively shows testimony all preserved its sufficiency not considered.* Unless it affirmatively appears from a fair construction of the record that all the testimony is preserved, the question whether the findings and judgment are sustained by the testimony is not open for consideration.

*Error from Russell District Court.*

*Hon. W. G. Eastland, Judge.*

REVERSED AND REMANDED.      OPINION FILED DECEMBER 5, 1896.

ON October 23, 1890, a contract was made by which Frederick Willig exchanged 480 acres of land in Russell County, subject to a $600 mortgage, together with the personal property thereon, consisting of cattle, horses, mules, implements, etc., with W. S. Ferguson and H. H. Housley for a large number of lots in the city of Wyandotte. All the lots were incumbered except two, upon which there were buildings and other improvements. Soon after the contract for the exchange was made deeds were executed, and in the deed for the city lots in controversy it was covenanted by the grantors that they were "free and clear of all incumbrances excepting a certain mortgage to the amount of $1,216.65, at 7 per cent., which grantee assumes, and is a part of the consideration of this deed." At the time of the transaction the lots were incumbered, with a large number of others, by a mortgage dated January 1, 1890, for $17,000, to secure five notes, one of which fell due on the first day of January of each year from 1891 until 1895. The mortgage was executed to L. H. Wood and had been assigned to the Lombard Investment Company. It contained a clause providing for the release of any of the lots upon payment of a proportion of the mortgage debt, as follows :

"And the said party of the second part hereby agrees with the party of the first part that in the event that any payment of $500 or multiple thereof, at any interest-paying time, shall be paid on account of any of the within described notes as therein specified, then said second party shall at the request of said first

party cause to be released so much of such portion of lots, tracts or parcels hereinbefore described and set forth as one-third of the appraised value of said lots shall be equal to the amounts so paid ; for example : suppose a particular lot should be appraised at $1,500, then upon payment of $500, according to the tenor of said notes, said first party may request that said lot be released by said second party.    The appraised value shall be determined by the written appraisement of the above described lots, which written appraisement was signed by R. J. Camp and H. H. Housley and hereto attached and made a part hereof."

Attached to the mortgage was an appraisement which showed that the amount required to release the lots in controversy was $1,216.65, being one-third of their appraised valuation.  On January 1, 1891, Willig, claiming that false representations were made to him with respect to the incumbrances upon the lots, undertook to rescind, and to tender back conveyances of the lots, demanding the transfer to him of the property in Russell County which he had traded for the lots. There was an error in the description of the lots so tendered back, and the conveyances tendered did not include all the lots.   The two lots which Willig received without incumbrance had been mortgaged by him for the sum of $500 before the tender was made. At the same time he also demanded damages in the amount of $834.46.    The demand was refused and this action was begun.    A trial was had with a jury which returned a general verdict in favor of Willig, finding that he was entitled to a rescission of the contract. The following special findings of fact were also returned with the verdict :

" 1.  Did Willig offer to pay to the Lombard Investment Company, the holder of the $17,000 mortgage, the sum of $1,216.65 or any other sum as a considera-

tion for the release of the lots in London Heights, second subdivision ? Ans. No.

" 2. What, if anything, did Willig do toward getting the lots in London Heights released from the lien of the $17,000 mortgage? A. He went to see about it and found he could do nothing.

" 3. When did Willig first learn of the existence of the $17,000 mortgage? A. About the last of March or first of April, 1891.

" 4. Could Willig have had the lots in the London Heights (second subdivision) released from the lien of the $17,000 mortgage on payment of the sum of $1,216.66 and interest thereon at the rate of 7 per cent.? A. No.

" 5. Prior to commencing the suit did Willig incumber for $500 certain lots received from defendants clear of incumbrances? A. Yes.

" 6. Was Willig damaged by reason of any difference between the covenants of the contract and deeds and the actual facts in regard to the $17,000, and if so, how much damages did he suffer and what are they? A. First, yes ; second, don't know to what extent.

" 7. Did Willig agree to pay $1,216.65 as a part of the consideration for the six lots in London Heights, second subdivision? A. Yes, according to the contract.

" 8. If you answer the above in the affirmative, has he paid or offered to pay it to the holder of the mortgage? A. No."

Motions were made by Ferguson for judgment upon the special findings and for judgment upon the evidence, notwithstanding the verdict and special findings ; but they were overruled and judgment was awarded in favor of Willig. Ferguson brings the proceedings here for review.

*Sutton & Dollison,* for plaintiff in error.

*Dail & Bird,* and *Harry L. Pestana,* for defendant in error.

JOHNSTON, J.   It is earnestly contended that the testimony does not sustain the verdict and judgment, but, as the record fails to affirmatively show that all the testimony is preserved, that question is not open for examination.   No statement is found in the case-made to the effect that it contains all the evidence; and although it is claimed that the recitals at the opening and closing of the testimony for each party furnished an equivalent of the statement, there are several breaks in the continuity of the testimony, so we cannot say that other witnesses were not examined or other testimony may not have been received.   It cannot be presumed that all the evidence is preserved.   That fact must affirmatively appear from a fair construction of the record.   *Moody v. Arthur,* 16 Kan. 419; *Greenwood v. Bean,* 20 id. 240; *Winstead v. Standeford,* 21 id. 270.

Willig testified that he was not informed about the $17,000 mortgage, and had no knowledge of its existence until he went to the Lombard Investment Company in the early part of April, 1891.   He states that he went there with a view of making an interest payment on the mortgage debt against the lots, and that he was then told of the existence of the mortgage and that payments could only be made as the mortgage stipulated.   He did not then nor at any time afterward offer to pay the $1,216.65 mortgage debt that was mentioned in the deed and which he had assumed as a part of the consideration for the lots.   On the other hand, Ferguson testifies that he explained to him the character of the incumbrance, and the manner in which a lot could be released by paying a proportionate share of the mortgage debt, substantially as the release in the mortgage provides.   The contract for

the exchange of properties provided that Ferguson should furnish to Willig an abstract of title. This was furnished, and upon its face it showed the $17,000 mortgage. Other witnesses testified that Willig examined the abstract, and spoke of the $17,000 mortgage and the manner in which lots could be released from its obligation. The mortgage itself, containing the release clause, was of record; and appended to the mortgage was the appraisement of the property, by which it appears that the proportionate share of the mortgage debt against the lots in controversy was exactly the amount of mortgage debt assumed by Willig and mentioned in

1. Alleged misrepresentations denied, burden of proof.
the conveyance to him. There was testimony, too, from the managers of the Lombard Investment Company that Willig had never proposed to pay his share of the mortgage debt, and that if he had tendered the same it would have been accepted and the lots would have been released from the mortgage. In this state of testimony an instruction was given that "the burden of proof is upon the plaintiff in this action, and he must make out his case by the preponderance of the evidence; but where the defendant attempts to show knowledge by plaintiff of the existence of the $17,000 mortgage he must show this by the greater weight or preponderance of the evidence." In this we think there was error. The plaintiff asked a rescission on account of misrepresentation and concealment concerning the $17,000 mortgage. It was the principal fact in the case, and the burden of proving it was upon him. He avers and insists that the character and amount of the mortgage were misstated to or withheld from him by the defendant below. If he was correctly informed, as much of the evidence tends to show, he has failed

to support the main fact in the case and the one which is essential to a recovery. The alleged fraud depended upon whether he was informed or misinformed about this mortgage ; and this fact was necessarily involved in the issue which he tendered. He held the affirmative of the issue, and if no proof had been offered to sustain it his action must have failed. He who alleges that a transaction is fraudulent takes upon himself the burden of proving every necessary element of the fraud. If the defendant conceded the misrepresentation, and claimed that the plaintiff had full knowledge of the fraud and had therefore acquiesced in or waived it, it might well be argued that the burden of showing the knowledge would rest upon the defendant. In this case, however, the misrepresentations constitute the fraud relied upon by the plaintiff ; and the matter of whether he was misinformed and deceived is an essential feature of his case. The mortgage itself was a matter of public record and revealed its own character. He had possession of an abstract which pointed out the existence of the mortgage ; and in view of the nature of the action and the issue which he tendered, the burden of showing the deception or that he was without knowledge of the mortgage was upon him.

Other objections are argued, some of which might be deemed to be serious if we could say that all the evidence in the case was before us, but owing to the condition of the record we will not undertake to consider or decide them.

For the error mentioned the judgment of the District Court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.