By the COURT.
This is an appeal from an order overruling a motion for a new trial and from the judgment. The matter in controversy is the right to the use of the water of Black Pine creek, Oneida county. The appellants allege appropriation of all of the water of said creek in 1880, by their grantors and predecessors in interest. Respondent denied the allegations of appropriation, and by way of counterclaim or cross-complaint claims all of the water of said creek by appropriation made in May, 1884. The court without a jury tried the cause, and rendered judgment in favor of the respondent who was defendant in the court below.
There was no denial of the allegations of the cross-complaint, and counsel for respondent contend that for that reason said allegations are admitted, and that the court would have been *609 justified in finding said allegations true, regardless of the proof. The record fails to show that respondent moved for judgment •on his cross-complaint, but it does show that he went to trial and introduced his proofs for the purpose of establishing the ■allegations of his cross-complaint. We think that respondent waived an answer by going to trial without objection, the same as though an answer had been filed, and that he is es-topped from claiming now that he is entitled to a judgment on the pleadings.
In Bliss on Code Pleading, section 397, it is said: “The defendant may waive a reply and if he shall go to trial as though reply, by way of traverse, were in, he shall be deemed to have waived it, or it will be considered as having been filed.” The question has been raised as to whether that part of the answer called a cross-complaint is in fact a cross-complaint, or merely a. counterclaim, but in our view of the case it is not necessary for us to determine that question. If it is a counterclaim its ■denial is not necessary, and if a cross-complaint, an answer thereto has been waived. The appellants allege appropriation by their grantors and predecessors in interest of all the water ■of Black Pine creek in January, 1880, for the irrigation of the land described in the complaint. There is not a particle of ■evidence in the record even tending to prove said allegations, or that they are entitled to any of the water of said creek for any ■purpose prior to 1888.
A stipulation purporting to have been made by Jason Wells and J. S. Houtz on November 11, 1885, whereby Wells agreed that Houtz should have the free use of one-third of the water of the aforesaid creek was put in evidence, and A. Heed was sworn as a witness on behalf of appellants and testified that respondent tras present when said stipulation was made and consented to it, but respondent denies that he had anything to do with the making of said stipulation, or that he ever consented to the making of the same. Appellants thereafter introduce in evidence a deed of conveyance from George J. Wells to John S. Houtz conveying the following described property, to wit: ■“All improvements situate on a possessory claim as more fully -appears in Hook A’ of Possessory Claims, page 468, also a *610 certain water right in Black Pine creek, Oneida county, Idaho.” And also a deed from John S. Houtz and wife to the appellants conveying the following described property, to wit: “All improvements situate on a possessory claim as more fully appears in Book A of Possessory Claims of said Oneida county at' page 468. Also a certain water right in Black Pine creek in-said county of Oneida now and heretofore used in connection-with said possessory claim.” The stipulation and two deeds; mentioned were all of the written evidence introduced. Thepossessory claim record referred to in said deed was not put. in evidence.
Conant, one of the appellants, testified on their behalf that he first became acquainted with Black Pine creek in 1886, and' that they bought Houtz and Riche out and afterward bought Houtz’ interest in said stream and his inclosure. That they took a deed of all the property so purchased including the-water. Gillispee, a witness on behalf of the appellants, testified' that he first became acquainted with said creek in 1885, and gave no testimony as to the date of the location or appropriation of any of the water thereof. The foregoing is substantially all of the evidence introduced by appellants in support of the-allegations of the complaint.
' It is evident therefrom that they claim through deed fromHoutz, and Houtz’ claim is based on the stipulation and deed from Wells. Both deeds recite as a foundation of their rights; the possessory claim referred to in said record, but the record is not introduced in evidence and therefore the claim of title is not complete. It is not shown that Houtz ever put any of the water of said stream to a beneficial use, except in 1880, when he attempted to raise a small patch of potatoes. Nor is there-any evidence to show that Wells ever appropriated any of the-water of said creek, except jointly with respondent Jones in-1884, which appropriation was made for the reclamation and irrigation of the quarter section then claimed jointly by Wells and Jones, so claimed by them till 1888, and since that date by J ones.
In support of respondent’s claim it is shown by the evidence that said Wells and respondent Jones settled upon the land *611 described in respondent’s cross-complaint in May, 1884, and that said Black Pine creek has its source in several springs arising on said land. That they jointly diverted the water oí said creek by means of a dam and ditch upon said land. That the ditch was eighteen inches wide and from ten to fourteen inches deep, and was of sufficient capacity to carry all of the water of said creek, shown to be from twenty to thirty inches. That a little plowing was done that season on said land and some oats and potatoes planted, some fencing was also done that year and a log cabin gotten ready for the roof. That little was done toward raising crops till 1888, but each year they attempted to raise a small crop and used a little water for that purpose. In 1888 some potatoes, half acre of garden stuff, and about five acres of oats were raised. It appears that there was an understanding or an agreement between Wells and Jones that they would jointly improve said quarter section of land and divide it, or in case one desired to sell out and go away, the other should purchase his improvements.
Jones testified as follows: "If he went I was to have the improvements ; if he stayed he was to have one-half of the claim. That was the agreement.” He further testified that he paid Wells part for his improvements. Hutchinson, a witness on behalf ■ of respondent, testified that he had known said creek since 1877. Came to the Jones ranch in July, 1877. Berry was living there in 1878. He sold to Houtz in 1879. Houtz and possibly Biche owned it till 1884. “Saw Jones there first in 1884. Saw him and Wells making a ditch. In 1880 Houtz put in a few potatoes with water. Some time in July a heavy rain took his dam out, and from that time to 1884 the water ran unmolested in the old channel and wasn’t used at all. Jones was the next I saw there. Saw a small field fenced, ditch ran to the field. Jones has been there right along since 1884.”
Horn testified on part of defendant that he came to Sublet with Hutchinson and had known Jones’ claim ever since. Helped Houtz plant potatoes in 1880. Don’t remember of any other crop by those parties. They did not live there. Had a corral and closed field to put stock in. Had no indos *? ure for farming to his knowledge. Jones came in spring of 1884. He and Wells made ditches and plowed some. Put in a little crop. Jones had partially fenced about one hundred acres.
Austerhaus testified on behalf of respondent substantially as ■follows: That he had known Black Pine creek since 1875. No one was living there in 1880. Houtz and Riche claimed a summer ranch there. They were on the G-allager ranch. They claimed it during 1881, 1882, and 1883. They were not doing any farming then. Knew there was a cabin on Jones’ ranch in 1884 and some little fence. Could see that Jones was adding a little fence all the time. It is about a mile from Gallager’s place to Jones’ place and about five miles to Conant’s inelosure.
We are of the opinion that the evidence is sufficient to support the judgment. It is contended that respondent has not used, or put to a beneficial use all of the water of said creek, and for that reason he has forfeited his right to all of the water not used for the purpose intended. It is true that the evidence fails to show that respondent has utilized the entire amount of water diverted. There is no question but what respondent had the right to appropriate, of unappropriated water, sufficient, not only for the present, but also for the future needs of his land, when he shall get it into cultivation.
The question arises as to the diligence to be exercised in the application of the water to the intended use. Section 3161 •of the Revised Statutes of 1887 declares the diligence necessary to be exercised in conducting the water to the point of intended use after thé location of the same; but the law is silent as to the diligence to be exercised in making application of the water appropriated.
The appropriator would no doubt be entitled to a reasonable time in which to get his land in cultivation and to make such .application. If that be true, it follows that what constitutes reasonable time is a question of fact dependent upon the cir«vn-mstances of each particular case. No inflexible rule should be made by which to decide what constitutes a reasonable time in this matter. We are of the opinion that a person who complies with the law as to locating and conducting the water to the point of intended use has such time as he may need, or require, using ordinary diligence in getting his land into cultivation, to make application of such water to the intended use, such time at least, as is reasonable under all of the circumstances of the case.
Poor men as a rule have settled upon the arid lands of this state and taken them under the laws of Congress, many of them under the homestead law, and are able to clear but a small portion of such lands of sage brush, from year to year, and put it in condition for raising a crop, and it will take years for many of them to prepare their entire farms for cultivation and to make application of1 the water appropriated thereto. A decision that would defeat persons acting in good faith and using reasonable diligence from securing the full benefit of the water appropriated would be most unjust and inequitable. In the meantime, however, he is only entitled to such water from year to year as he puts to a beneficial use. A person may add from year to year acreage to his cultivated land, and increase his application of water thereto for irrigation as his necessities may demand, as his abilities permit, until he has put to a beneficial use the entire amount of water at first diverted by him and conducted to the point of intended use.
Some objection is made to the findings of the court. The court evidently found all facts that the pleadings warranted and perhaps some facts not fully warranted by the proof, but we think the judgment entered is fully sustained by the findings,, that are clearly within the pleadings and proofs, and on the whole, we think that the findings and proofs are sufficient to warrant the judgment.
The judgment is affirmed with costs in favor of respondent.