#### (January 31, 1902.)

### HALL v. BLACKMAN.

#### [68 Pac. 19.]

WATER RIGHTS LOCATED BY COPARTNERS OR COTENANTS.—Where E. & E., as copartners, procured title to four hundred and eighty acres of adjoining land (the former to three hundred and twenty acres and the latter to one hundred and sixty acres), and diverted and appropriated water sufficient to irrigate the same and conducted such water upon said land in 1872, and in that year put two hundred acres of the land that stood in the name of the former in cultivation, and thereafter until the year 1886, did not increase

the acreage of cultivated land, and in the latter year dissolved partnership, and divided their land and water right equally, the former getting all of the cultivated land and the latter the uncultivated. *Held,* that the right to the use of water for the irrigation of all of said land had been acquired, and should date from the first appropriation of such water, to wit, March, 1, 1872.

WATER RIGHT APPURTENANT TO LAND.—Under the facts, *held,* that the right to the use of water·sufficient for the irrigation of the land not actually put into cultivation became appurtenant thereto, and was transferred by deed conveying such land and its appurtenances.

PRESCRIPTION RIGHT—HOW ACQUIRED.—Under the law of this state, in order to obtain a prescription right to the use of water, the use on which such claim is based must be adverse to the rights of the owner, and must be accompanied by all of the elements necessary to constitute adverse possession and use.

SAME.—A prescriptive right to the use of water cannot be acquired by the use thereof with the consent or permission of the owner, or where the statute law requires him to let others use it.

PROSPECTIVE STATUTE.—The provisions of section 12 of an act entitled "An act providing for the appropriation and distribution of water," etc., approved February 25, 1899 (Sess. Laws 1899, p. 380), are prospective, and are not intended to forfeit vested rights.

WATER RIGHTS DECLARED TO BE REAL ESTATE.—By the provisions of sections 16 and 2825 of the Revised Statutes, possessory rights are made real estate, and may descend to the heirs of a deceased locator.

POSSESSORY CLAIMS.—Sections 4552 to 4556, inclusive, give the right of action to recover public lands not inclosed and cultivated, and have no application to the facts of this case, while the provisions of section 4041 of the Revised Statutes have some application.

USE OF WATER—PUBLIC LANDS—DEATH OF APPROPRIATOR—RIGHT DESCENDS TO HEIRS.—A settler upon public lands of the United States may appropriate water and acquire the right to the use thereof upon such lands, and such right may be sold by him, or, in case of his death, the right descends to his heirs.

(Syllabus by the court.)

APPEAL from District Court, Elmore County.

Hawley & Puckett and Wyman & Wyman, for Appellant Blackman.

The theory of the judge of the court below, in arriving at a conclusion in this case, seems to have been that a water right

attaches to a particular piece of land upon which such water was used, and that the Ethell brothers having actually used most of their water upon lands now owned by plaintiff Wilson, that such lands must have the benefit of the appropriation. This theory, we urge, cannot be maintained, and is neither founded upon law or upon reason. The right to the use of water acquired by prior appropriation is not in any way dependent upon the place of its application to the beneficial use designed, or to the particular use to which it was first applied. (*Davis v. Gale,* 32 Cal. 26, 91 Am. Dec. 554; *Maeris v. Bicknell,* 7 Cal. 261, 68 Am. Dec. 257.) The decision in *Maeris v. Bicknell* has always been followed in California, and the principle decided applies and has always been construed as applying to water appropriated for agricultural purposes as well as that used in mining. We cite in support of this doctrine, besides the above: *McDonald v. B. B. A. W. Mfg. Co.,* 13 Cal. 220; *Coffin v. Left Hand Ditch Co.,* 6 Colo. 443; *Thomas v. Gounod,* 5 Colo. 530; *Atchinson v. Peterson,* 20 Wall. 507; *Woolman v. Yarringer,* 1 Mont. 535; Huston's Irrigation Law, p. 64; *Santa Paula Waterworks v. Peralta,* 113 Cal. 39, 45 Pac. 168; Long on Irrigation, p. 50; Kinney on Irrigation, 233, 234; 5 Sess. Laws, sec. 10, p. 381.) "The right of a prior appropriator of water cannot be defeated to any portion thereof on the ground that he has, by reason of a mistake as to the location of his boundary lines, used a portion of such water upon other lands than his own." (*Mahony v. Neiswanger,* 6 Idaho, 750, 59 Pac. 561.) "Possessory rights to rights of way for irrigating ditches and the right to the use of water may each have an existence independent of the other." (*Ada Co. Farmers' Irr. Co. v. Farmers' Canal Co.,* 5 Idaho, 793, 51 Pac. 990.) Appellant sets up in subdivision 9 of his cross-complaint that he has been in the continued adverse and uninterrupted possession, use and enjoyment of two hundred and fifty inches of the waters of Bennett creek for more than five years before the commencement of the action, and thereby has acquired a right by prescription to the use thereof. (*Smith v. Hamilton,* 20 Mich. 433, 4 Am.

Rep. 398.)    The plaintiff Wilson, following the example of his predecessors, made no objection for over five years to the use of one-half of the waters by appellant.    Wilson stood passively by and allowed appellant to open out his fields and bring his entire ranch under cultivation and irrigate it with the water from their joint ditches, and he now is estopped from denying Blackman's right.    (*Dickerson v. Colgrove,* 100 U. S. 578; *Kirk v. Hamilton,* 102 U. S. 68; *Smith v. Hamilton,* 20 Mich. 433, 4 Am. Rep. 398; *Parke v. Kilham,* 8 Cal. 78, 68 Am. Dec. 310; *Kirman v. Hunnewill,* 93 Cal. 527, 29 Pac. 124; Long on Irrigation, 88-93; Kinney on Irrigation, 293.)

W. E. Borah and E. M. Wolfe, for Plaintiff Wilson.

In support of our contention that water brought upon premises and used for irrigating the land will pass with the land when the land and the appurtenances are conveyed, see the following authorities: *Farmer v. Water Co.,* 56 Cal. 11; *Cave v. Crafts,* 53 Cal. 135; *Coonradt v. Hill,* 79 Cal. 587, 21 Pac. 1099; *Clyne v. Water Co.,* 100 Cal. 310, 34 Pac. 714; *Frank v. Hicks,* 4 Wyo. 502, 35 Pac. 475, 1025; *Ely v. Ferguson,* 91 Cal. 190, 27 Pac. 587; *Eshelman v. Snyder,* 82 Ind. 502; *Wilson v. Higby,* 62 Fed. 726; *McGinness v. Stanford,* 6 Idaho, 372, 55 Pac. 1020.    "A prescriptive title cannot be founded upon use and occupation which is not adverse to the title of the owner, but which is under permission of such owner." (*Davis v. Devanney,* 7 Idaho, 742, 65 Pac. 500; *Lakeside Ditch Co. v. Crane,* 80 Cal. 181, 22 Pac. 76; *Hanson v. McCue,* 42 Cal. 310, 10 Am. Rep. 299.)    "The law is well established that no right to the use of water can be acquired by prescription unless there has been such an invasion of the rights of the parties against whom it is asserted as would give them a cause of action therefor." (*Carson v. Hays,* 39 Or. 97, 65 Pac. 817; *Dick v. Bird,* 14 Nev. 167; *Anaheim Co. v. Water Co.,* 64 Cal. 185, 30 Pac. 623; *Alta Land etc. Co. v. Hancock,* 85 Cal. 219, 20 Am. St. Rep. 217, 24 Pac. 645; *Grigsby v. Water Co.,* 40 Cal. 396; *Union v. Ferris,* 2 Saw. 176, 450; Kinney on Irrigation, sec. 294; *Huston v. Bybee,*

17 Or. 140, 20 Pac. 51.) "A right to the use and possession
of the water of a stream may be acquired by prescription only
when accompanied by claim of title and by such possession
and use as exclude other claimants from the use and posses-
sion thereof." (*Brossard v. Morgan,* 7 Idaho, 215, 61 Pac.
1031; *Lower Co. v. Louden Co.,* 27 Colo. 267, 83 Am. St.
Rep. 80, 60 Pac. 631; *Boggs v. Mining Co.,* 14 Cal. 279;
*Water Supply etc. Co. v. Tenney,* 24 Colo. 344, 51 Pac. 505.)
The next question is, Did plaintiff Wilson forfeit his water
rights by failing to record a notice as required by section 12,
House Bill No. 185, Session Laws of 1899? Section 10 says
that those who have heretofore acquired water rights must be
taken to have secured them to the extent of their works re-
gardless of compliance with this act. The language "this
act," includes section 12. (*Kirk v. Bartholomew,* 3 Idaho,
367, 29 Pac. 40; *McRea v. Haraszthy,* 51 Cal. 150.)

N. M. Ruick, for Respondent Hall, cites no authorities upon
the points decided not cited above.

W. C. Howie, for Defendants C. F. Ross and Ida Ross.

Conceding, for the sake of argument, that G. B. Ross' pos-
sessory right to the land would not descend to his heirs, there
can be no question that G. B. Ross acquired a water right
and that water right descended to his heirs, for that a water
right can be acquired and held independent of land has been
repeatedly held by this court, and that it is the universal law
in these western states, see *Judkins v. Elliott* (Cal.), 12 Pac.
116; Black's Pomeroy on Water Rights, sec. 47; Gould on
Water Rights, sec. 230; *Hindman v. Rizor,* 21 Or. 112, 27
Pac. 13. Though the deeds were to the land as though the
heirs had the absolute title in fee to it, while they had only
a contingent interest, yet the deeds would convey whatever
interest they had in the land. (*Holbrook v. Holbrook,* 15
Me. 9; *Whetstone v. Ottawa Min. Co.,* 13 Kan. 320 (see 341);
*Martin v. Sterling,* 1 Root (Conn.), 210; *Law v. Hempstead,*
10 Conn. 23 (see 27); *Foote v. Saunders,* 72 Mo. 616; *Mt.
Washington Hotel Co. v. Marsh,* 63 N. H. 230; *Sinclair v.*

*Jackson,* 8 Cow. (N. Y.) 543 (see 579).   And the deeds would carry any and all water rights that had been used or enjoyed with the land whether the deed called for the appurtenances or not.   (*Hindman v. Rizor,* 27 Pac. 13; *Cave v. Crofts,* 53 Cal. 135; Gould on Waters, sec. 354; *Geddis v. Parrish,* 1 Wash. 587, 21 Pac. 314; *Frank v. Hicks,* 4 Wyo. 502, 35 Pac. 475; *Farmer v. Ukiah Water Co.,* 56 Cal. 15; *Eshelman v. Snyder,* 82 Ind. 498 (see 501); *Frank v. Hicks,* 4 Wyo. 502, 35 Pac. 1025; *Tucker v. Jones,* 8 Mont. 225, 19 Pac. 571; *Cross v. Kitts,* 69 Cal. 217, 58 Am. Rep. 558, 10 Pac. 409; California and Idaho Statutes the same; compare 2 Deering's codes, sec. 1104, and Rev. Stats., sec. 2926; *Smith v. Cooley,* 65 Cal. 46, 2 Pac. 880; *Quinlan v. Noble,* 75 Cal. 250, 17 Pac. 69; *Smith v. Corbit,* 116 Cal. 587, 48 Pac. 725; *Kennedy v. Burnap,* 120 Cal. 488, 52 Pac. 843; *Wilson v. Highbee,* 62 Fed. 723.)

SULLIVAN, J.—This action was brought to determine the respective rights and priorities of the plaintiffs and defendants to the use of the waters of Bennett creek, Elmore county. The action was commenced by Adin M. Hall and W. E. Wilson, as plaintiffs, against William H. Blackman, Charles Geerhart, Charles F. Ross, Mrs. Ida Ross, Benjamin Sparlin, John McCune, S. B. Blackwell, and M. L. Davis, as defendants, and thereafter, by order of the court, S. B. Blackwell appeared as a plaintiff.   The pleadings put in issue the rights and priorities of the respective parties to the use of certain specified quantities of the waters of said stream.   Judgment and decree was entered fixing the priority of the respective parties and amount of water to which each was entitled.   Three appeals were taken from the orders of the court overruling three several motions for a new trial.   The first, in order of time, was taken by defendant William H. Blackman, and in that appeal the plaintiffs, except Blackman, and all defendants, were made respondents.   The second appeal was taken by defendants Charles F. Ross and Mrs. Ida Ross, in which all other defendants and the plaintiffs were made respondents. The third appeal was taken by the plaintiff W. E. Wilson and

his coplaintiffs, and all of the defendants are made respondents.

We shall consider the errors relied upon in each of the appeals in their order above stated. The first is the appeal of William H. Blackman. The court decreed to him three inches of water to date from March 1, 1872, and two hundred and eighty-eight inches to date from March 1, 1886. No complaint is made of the quantity of the water allowed to said appellant, but it is contended that the court erred in fixing the date of his right to the use of said two hundred and eighty-eight inches of water as beginning on March 1, 1886, and contends that said right should date from March 1, 1872. The record shows, among others, the following facts: That David B. Ethel and Fielding Ethel, hereafter referred to as "Ethel Bros.," formed a partnership in 1871 for the purpose of acquiring and cultivating lands in the vicinity of Bennett creek, Elmore county, which partnership continued until the year 1885. That at the time of the dissolution of the partnership they owned four hundred and eighty acres of land, the legal title to three hundred and twenty acres of which was in Fielding Ethel, and the legal title to one hundred and sixty acres thereof was in David B. Ethel. Said lands are now owned by the plaintiff W. E. Wilson and appellant Blackman. That from the year 1872 about two hundred acres of said land were cultivated by said Ethel Bros., as copartners, and the products thereof became partnership property. That in 1872 said Ethels, as copartners, appropriated five hundred inches of the waters of said Bennett creek for the reclamation and irrigation of said four hundred and eighty acres of land, and by means of dam and ditches of sufficient size and capacity diverted and conveyed said water to and upon said land, and used the same thereon, until 1886, when said copartnership was dissolved. That by deeds of conveyance the Ethels divided said lands between themselves, and also agreed that each should have and own the right to the use of one-half of the water so diverted, as aforesaid. The plaintiff Wilson now owns the land that Fielding Ethel retained in the division between the copartners, and the appellant owns the lands that

fell to David B. Ethel thereunder. It appears that in the
division of said land an old stage road that ran across it was
made the dividing line, Fielding Ethel getting all of the land
north of that road and David B. all south thereof. That after
the dissolution of the copartnership the former partners and
their successors, the plaintiff Wilson and the appellant Black-
man, continued to use said water, dividing the same equally
between themselves, each taking one-half thereof up to about
time this suit was brought. Under that appropriation appel-
lant claims two hundred and fifty inches of water of said
stream dating from October, 1871; also fifteen inches of the
flow of certain springs arising in the lands of plaintiff Wil-
son; also two hundred and forty inches of the water of said
stream dating from 1882 upon a second tract of land, and one
hundred and sixty inches thereof for use on a third tract. It
is contended that appellant Blackman, so far as his earliest
right is concerned, is entitled to have that right dated as
early as the right of plaintiff Wilson, for the reason that they
are the successors to the rights of Fielding Ethel and David
B. Ethel, who were copartners in the appropriation and use
of said five hundred inches of water. The record shows that
all of the cultivated land so owned by Ethel Bros. was on
the part that fell to Fielding Ethel under the division. The
record also shows that all of said lands could have been irri-
gated from said ditches, as the Fielding Ethel tract was above
the tract of David B. Ethel, and that the water from said
ditches not used in the irrigation of the upper or Fielding
Ethel tract flowed down on the David B. Ethel tract through
a depression or slough that ran across said land. After the
dissolution of said copartnership in 1886 David B. Ethel and
others jointly made a location of several hundred inches of
the water of said creek, and constructed a ditch in which to
convey the water so located upon the David B. Ethel land,
and on other lands owned by his co-owners in said ditch. After
said division David B. Ethel put much of his said land in cul-
tivation, and raised hay and grain thereon until his death,
which occurred about 1890. One A. T. Huffaker was ap-
pointed administrator of his estate, and by order of the pro-

bate court sold the said land to the appellant Blackman. Plaintiff Wilson, in 1893, purchased the Fielding Ethel land, and from that time to 1898 he and appellant Blackman divided the water equally between them. The deeds exchanged between the Ethels on the dissolution of their partnership do not particularly name the water rights, but do convey the land and appurtenances. There can be no doubt from the evidence that it was the intention of Ethel Bros. in the division of their partnership property to divide their water right equally between them. Several witnesses testify that that was the agreement between them. James Stout testified on the trial as a witness. He testified that he was called on to draw the deeds above referred to, and testified in part as follows: "My instructions from them [Fielding Ethel and David B. Ethel] was to divide the land, improvements, and water rights equally, and if it was not done it was because I hadn't the knowledge. That is what I thought I did. I drew both deeds. I did not draw any other papers with reference to the water. The only conveyance was the two deeds. They wanted me to divide it all equally between them." From the evidence contained in the record there can be no doubt that the Ethels intended to divide the water equally between them, and witness Stout intended by said deeds to accomplish that result. After the deeds were drawn and exchanged in 1886 Fielding and David B. Ethel did divide such water equally between them as long as they remained the owners of said lands. Not only that, but plaintiff Wilson, the successor of Fielding Ethel, and the appellant, as the successor to the interest of David B. Ethel, continued from 1893 to 1898 to divide said water equally between them, thus recognizing the agreement between the Ethels in regard to the equal division of said water. Regardless of those facts counsel for plaintiff Wilson contend that, as not more than three inches of water was actually used in the irrigation of the land that fell to David B. Ethel in said division, only three inches of water became appurtenant to said land, and no more than that amount was conveyed to appellant Blackman. We are unable to agree with that contention under all of the facts of this case. The Ethel Bros.

jointly appropriated five hundred inches of water for the irrigation of said four hundred and eighty tract of land, and the question here involved is the same as if said land and appropriation of water was owned and made by one person. The evidence shows that said amount of water was diverted by means of said ditches each succeeding irrigating season, and taken upon said land, and applied to the irrigation of about two hundred acres thereof, up to 1886, when more of said tract was put into cultivation by David B. Ethel after the partnership division, and although they had but about two hundred acres of said land in cultivation from 1872 to 1886 they preserved their right to the use of sufficient water to irrigate all of said tract that is susceptible of irrigation, and for that reason the rights of each, as shown by the evidence, must date from March 1, 1872, so far as water for the irrigation of the said four hundred and eighty acres of land is concerned. This would not affect the date of Wilson's right to the use of water for the irrigation of land that formerly belonged to the partnership, which land he purchased from Fielding Ethel, but it requires a change in the date of the right of Blackman to the use of water in the land which he purchased from David B. Ethel, and which had belonged to said copartnership. The use of such water by Fielding and David B. Ethel was in common during the existence of their copartnership, although used upon the land entered by Fielding Ethel (as to the cultivated land) and the continuous use by each of those parties and their successors in interest of one-half of the water until shortly before this action was brought, clearly establishes the right of plaintiff Wilson and appellant Blackman as of the same date to the amount of water required for the proper irrigation of the land which formerly belonged to said copartnership. The water appropriated by Ethel Bros., as copartners or tenants in common, for the reclamation and irrigation of said four hundred and eighty acres of land attached to and became appurtenant to all of said land, or the right to the use thereof became so appurtenant. The right to the use of water sufficient to irrigate the whole of said tract of

land was preserved by the construction of ditches of sufficient size and capacity to carry onto said land a sufficient quantity of water for that purpose, and by thus diverting and taking that amount of water thereon. The evidence clearly shows that that was done, and that said amount of water was so conducted each successive irrigating season whenever said stream carried that quantity of water. It is contended by counsel for appellant Blackman that Blackman had used one-half of the water diverted by Ethel Bros. for more than five years without objection by plaintiff Wilson, and for that reason he had acquired a prescriptive right thereto by adverse user. In order to obtain a prescriptive right to the use of water, the use upon which such claim is based must be adverse to the rights of the owner. It must be accompanied by all of the elements necessary to constitute adverse possession and use. The claimant must have used such water continuously, uninterruptedly, and adversely for a period of five years. The use of such water must be an invasion of the rights of the person against whom such right is sought to be established, such as would give a cause of action in favor of the latter. In Long on Irrigation (section 90) the author says: "No adverse user can be initiated until the owners of the water right are deprived of the benefit of its use in such a substantial manner as to notify them that their rights are being invaded." It follows from the rule there stated that a prescriptive right to the use of water cannot be acquired by the use thereof with the consent or permission of the owners, and as under the law of this state it is made a misdemeanor for one who has the right to the use of water to waste it, and the law requires him to permit it to flow down the stream in case his necessities for the time do not require its use, thus it is made by the law difficult to acquire a prescriptive right to the use of water. For, if the law requires the one entitled to the use of water to let others use it in case he may not, for the time, need it, they may have its use under the provisions of the law which commands the consent of the owner. This law does not apply to real estate. The owner of real estate need not use it, and

in case he does not he is not required by law to let others use it, but in the case of the right to use water the law makes it a misdemeanor to waste it, and compels the one who has the right to the use of it to let others have it in case his necessities do not require its use. From these observations it will be seen that it is difficult to obtain a prescriptive right to the use of water under our law as it now stands. To do so the one entitled to the use of the water must require or need its use, and his right to such use must be invaded, and the one seeking to establish a prescriptive right must invade such right openly, notoriously, adversely, and continuously under a claim of right for the period of five years under the laws of this state, that being the period in which a prescriptive right to real estate may be acquired. Under the facts appellant did not acquire a prescriptive right to the use of such water. The record shows that the right to the use of said water had not been abandoned, and abandonment will not be presumed, but must be clearly established by the evidence. And under the facts of this case the entire right was preserved for use upon said land. While the evidence shows that nearly all of the cultivated land was upon the tract that fell to Fielding Ethel in the division of the partnership property, yet the evidence clearly shows that much of the water passed over the Fielding Ethel land to and upon the part that fell to David B. in the division aforesaid. It is a well-recognized rule that one tenant in common may preserve the common estate for the benefit of his cotenants. (Long on Irrigation, sec. 85; *Moss v. Rose,* 27 Or. 595, 41 Pac. 666, 50 Am. St. Rep. 743; *Cache La Poudre Irr. Co. v. Larimer & Weld Reservoir Co.,* 25 Colo. 144, 71 Am. St. Rep. 123, 53 Pac. 318.) And where cotenants appropriate water, and one tenant uses all of the water appropriated, he preserves not only his but his cotenants' right. The mere fact that a much greater acreage has been irrigated since 1886 does not establish a greater diversion. Greater economy in use often results in an increase of acreage cultivated and irrigated; and, as above stated, the evidence clearly shows that the Ethels and their successors

have diverted water to the full capacity of their ditches each successive year and during the irrigating season when there was sufficient in Bennett creek for that purpose.

The history of irrigation, in this state, shows that in the early irrigation period (of the then territory) very much more water was used per acre than is used at the present time. In the case at bar no more water has been decreed to Wilson and Blackman for the irrigation of said four hundred and eighty acres of land than was diverted and taken upon said land in 1872. But it is contended by counsel for plantiff Hall that, as there was no increase in the cultivated land from 1872 to 1886 by Ethel Bros., the rule laid down by this court in *Conant v. Jones,* 3 Idaho, 606, 32 Pac. 250, has no application to this case. That case was decided on the facts therein contained, and it was therein held that those facts were sufficient to preserve the respondent's right to the use of the water decreed to him by the trial court. The court there said: "A person, may add from year to year acreage to his cultivated land, and increase his application of water thereto for irrigation, as his necessities may demand, or as his abilities permit, until he has put to a beneficial use the entire amount of water at first diverted by him and conducted to the point of intended use." Certain facts were shown to exist in that case, and the court held that they were sufficient to entitle the appropriator to the use of water sufficient to irrigate his land as of the date of the appropriation. In the case at bar it is shown that Fielding Ethel and David B. Ethel diverted five hundred inches of the water of Bennett creek, and conducted the same to and upon the two tracts of land, composed of four hundred and eighty acres, owned by them, and that about two hundred acres of said land were reduced to cultivation during the first year of such ownership; and that said entire amount of water was diverted from said creek and taken upon said land each season up to 1886, and the greater part thereof used in the irrigation of the two hundred acres of land in cultivation north of said stage road, and what was not so applied flowed down over and upon the tract south of

said road. These facts are sufficient to preserve the right to
the use of said amount of water, or sufficient thereof for the
proper irrigation of said land. The Ethels, having put into
cultivation about two hundred acres of said land, presumably
had put into cultivation all of said land that their necessity
required, or all that their financial ability would permit, until
1886, when about one hundred and fifty acres more were re-
duced to cultivation and irrigated, and by those acts this case
is brought within the general rule laid down in *Conant v.
Jones.* The history of irrigation in this state shows that the
public lands have generally been taken by poor men, and that
they have not in twenty years brought into cultivation one-
half the land taken by them, and if our irrigation laws re-
quired them to cultivate all of their land in a very short time
or lose the right to water that they had diverted and taken
to the place of intended use it would result in defeating the
very purpose of the public land laws of Congress, and defeat
most settlers in acquiring the right to the use of sufficient
water to irrigate their lands. If the demands for the products
of the farm were not great enough to make such products
bring a little profit over and above the cost of growing, har-
vesting, and marketing them, the farmer must become bank-
rupt if he be required to raise crops on all of his land under
those conditions. Very much of the agricultural lands of
this state have, until very recently, been so situated with ref-
erence to the markets for farm products that many of the
settlers had no market for what they raised, and at best for
only a limited quantity, and to require them under those con-
ditions to farm all of their land would have defeated the very
purpose of the law, and bankrupt the farmer. As in the case
at bar, where water is diverted and appropriated for an entire
tract of land by two persons, the rule that applies to land
held by one person and water appropriated by such person
for the irrigation thereof applies with equal force to the case
at bar and to land or water held in common. Respondent
Hall could not have appropriated any of the water that Ethel
Bros. diverted from said creek and used on the land owned by

them. If they and their successors used it each and every year respondent Hall did not use it. Hall, no doubt, had notice of the capacity of the Ethel ditches, and of the amount of land owned by them. Under the facts of this case Hall's appropriation is subject to the prior rights of the owners of the Ethel lands, not only north of said stage road, but south of it, and to the entire tract for which the appropriation of 1872 was made. The use of sufficient water (up to about two hundred and fifty inches) had become in 1872 an appurtenant to that part of said four hundred and eighty acre tract that fell to David B. Ethel in said division and was conveyed by his administrator to appellant Blackman.

The second appeal is by Charles F. Ross and Mrs. Ida Ross, in which all other defendants and the plaintiffs are made respondents. Counsel for appellants assign two errors: 1. The allowance to plaintiff Hall of one hundred and fifty inches of water for the irrigation of his homestead consisting of one hundred and sixty acres. The evidence shows that Hall had cleared and cultivated and raised hay and grain on about one hundred and forty acres of his said homestead, and that it was all susceptible of irrigation. It is also thus shown that it requires one inch of water per acre for the proper irrigation of the same. The evidence is amply sufficient to sustain the judgment awarding to Hall one hundred and fifty inches of water. The evidence is also sufficient to sustain the judgment of the court awarding to Hall one hundred and thirty inches of water for the irrigation of his desert entry. The court erred in not allowing him the one hundred and thirty inches from April 1, 1885, as the evidence shows that he constructed his ditch in 1885 to cover one hundred and thirty acres of said land, and his right to the use of that amount of water should date from 1885; but apparently he is satisfied, as he has not appealed. In *Kirk v. Bartholomew,* 3 Idaho, 367, 29 Pac. 40, the court held as follows: "In determining the amount of water appropriated for useful or beneficial purposes, the number of acres of land claimed or owned by each party, and the amount of water necessary to the proper irrigation of the same, should

be taken into consideration." It is contended that the court
erred in not allowing Charles F. and Ida Ross two inches of
water per acre for the irrigation of their land. Upon a care-
ful examination of the evidence we conclude that the action
of the court in allowing them one and one-half inches per acre
ought not to be disturbed. It is contended by counsel for the
Ross appellants that the latter part of section 12 of an act
entitled "An act providing for the appropriation and distribu-
tion of water; the condemnation of lands for canals, ditches
and conduits; empowering the boards of county commission-
ers to establish a maximum rate for the use of water; and re-
pealing all acts and parts of acts in conflict with the provisions
of this act," approved February 25, 1889 (Sess. Laws 1899, p.
380), requires all former appropriators of water to file new
notices of location in the office of the county recorder con-
taining the facts in said section set forth within six months
after said act became a law, and that if they failed to do so
they forfeited their right to the use of such water. We can-
not agree with counsel in his contention. Section 10 of said
act provides that all ditches, canals, or other waterworks there-
tofore constructed or provided, by means of which the waters
of any stream have been diverted and applied to any beneficial
use, must be taken to have secured the right to the waters
claimed to the extent of the quantity which such works are
capable of conducting and not exceeding the amount claimed,
etc. This section and the other sections of said act, taken in
consideration with said provisions of said section 12, and con-
strued in pari materia, would indicate that no forfeitures were
intended by reason of a failure to comply with the provisions
of said section 12. At most said provisions are only directory,
and we are of the opinion that they are prospective only. The
construction contended for by appellant Ross would, if adopted,
result in depriving the citizen of valuable property rights with-
out due process of law, and conflict with the provisions of
the federal constitution upon that subject. We think the legis-
lature only intended that said provisions should apply to water

location notices that had not theretofore been filed for record, and that they did not intend to disturb vested rights.

The third appeal was taken by plaintiff Wilson. His co-plaintiffs and all of the defendants are made respondents. It is contended that the court erred in granting C. F. Ross any water whatever for the land included in his homestead entry. It appears that G. B. Ross settled upon unsurveyed land in 1867, a part of which was subsequently included in said homestead entry; that he built a dwelling-house and put other improvements thereon, and constructed a water ditch and conveyed water therein from said Bennett creek to said land. Said Ross died in 1887, before the government survey was extended over said land. Said land was surveyed in 1894, and on March 9, 1895, the respondent C. F. Ross entered said land under the homestead laws of the United States. About seventy-five acres of said land had been irrigated by said G. B. Ross prior to his death. C. F. Ross was appointed administrator of the estate of said G. B. Ross, and took possession of said land as such administrator in 1887, and irrigated the same, and continued in possession of said land, as administrator until he entered said land under the homestead laws of Congress. It also appears from the record that he received from some of the heirs of said G. B. Ross, deceased, quitclaim deeds to whatever interest such heirs had to said lands. By settling upon said unsurveyed land of the United States and putting improvements thereon G. B. Ross acquired the preference right to enter said lands when they were surveyed and placed on the market, and after his death, under the statutes of the United States in such cases made and provided, his heirs are allowed to perfect the title thereto. And by the provisions of sections 16 and 2825 of the Revised Statutes, possessory rights are declared to be real estate, and would descend to the heirs of a deceased claimant. Sections 4552 to 4556, inclusive, give the right of action to recover possession of certain public lands not inclosed or cultivated, and have no application to the facts of this case, while the provisions of section 4041 of the Revised Statutes apply to that feature of this case

wherein Ross claims title to the G. B. Ross land and water right by deeds from the heirs of G. B. Ross, as he claims under deeds from the heirs. As the administrator took possession of said land and water right and purchased whatever rights the G. B. Ross heirs had in and to the same, we are of the opinion that he acquired the use of the water that said deceased had appropriated for use thereon. One settling on the public domain may acquire a right to the use of water for the irrigation of the land taken by him, and he may sell such right, independent of the land, or, in case of his death, such right may descend to his heirs. The court did not err in awarding to C. F. Ross water for said land as of the date it was appropriated by said deceased.

It is apparent that a new trial would entail a great expense upon the parties, and would fail to benefit them, and for that reason we think it is to the interest of all parties that the cause be remanded to the trial court, with instructions to modify the findings of fact and judgment in accordance with the views expressed in this opinion, and it is so ordered. The judgment in all other respects is affirmed. Each party is required to pay the costs made by him on this appeal.

Quarles, C. J., concurs.

Stockslager, J., having tried this case in the court below, did not sit in this case, and took no part in the decision.

### ON REHEARING.

Per CURIAM.—The respondent Hall has filed a petition for rehearing, which we have carefully considered. We have again examined the evidence in the transcript, and find no good reason for granting a rehearing. It is not, as said respondent would seem to believe, impossible for a settler on the public domain to acquire a water right for the irrigation of certain lands prior to his filing upon or entering the same. In case of a settler who locates upon public lands, appropriates water for the reclamation thereof, and diverts such water, and by means of ditches conveys such water to and upon said lands,

prior to their entry, his water right, after entry, dates from the actual appropriation. This disposes of the real ground of the said respondent's contention for a rehearing, which we regard as untenable. The record shows that Fielding Ethel made pre-emption entry of one hundred and sixty acres of land on Bennett creek on the fifteenth day of April, 1874, and on October 9, 1876, made his final proof, and on November 10, 1877, received a United States patent therefor. It is also shown that Fielding Ethel, on the third day of December, 1874, entered under the timber culture laws of Congress one hundred and sixty acres of land on said Bennett creek, and that said entry was canceled on December 4, 1876, and on March 17, 1877, said Ethel entered said land as a homestead, under the homestead laws of Congress, and thereafter made final proof, and has received a United States patent therefor. It also appears that David B. Ethel entered, under the pre-emption laws of Congress, one hundred and sixty acres of land on said Bennett creek on April 15, 1874, made final proof, and received a United States patent therefor in 1877. Thus it is made to appear that Fielding and David B. Ethel entered under the laws of the United States four hundred and eighty acres of land on Bennett creek as early as 1874, and obtained patents for the same from the United States; and it also appears that they diverted, as early as 1872, five hundred inches of the waters of said Bennett creek for the irrigation of lands owned, or claimed, by them. It also appears from the complaint of the petitioner Adin M. Hall that he claims no water earlier than 1879, and as Ethel Bros. had received patents from the United States to three hundred and twenty acres of their said land, and had made final proof at the proper United States land office for another one hundred and sixty acre tract prior to 1879, they certainly were the owners of said four hundred and eighty acres of land prior to 1879, and had, prior to that date, diverted and taken upon said land water sufficient to reclaim the same.

A rehearing is denied.