(July 3, 1912.)

# RICHARD BENNETT et al., Appellants, v. F. A. NOURSE et al., Respondents.

[125 Pac. 1038.]

WATER RIGHTS—POINT OF DIVERSION—CHANGE OF—PRIORITIES—IRRIGA-
TION — APPLICATION OF WATER TO BENEFICIAL USE — REASONABLE
TIME—CHANGE OF POINT OF DIVERSION.

(Syllabus by the court.)

1. Under the provisions of sec. 3175, Rev. Stats. of 1887, a person entitled to the use of water may change the place of diversion if others are not injured thereby.

2. *Held,* that the court erred in not granting B. a water right of 160 inches with a priority as of April 8, 1885.

3. Water that is appropriated for irrigation purposes must be measured to the claimant at the point of diversion.

4. *Held,* that the court erred in not granting D. a water right of 160 inches with a priority of March 31, 1885.

5. An appropriator of water may adopt as his ditch, or a part thereof, a depression or slough, where it is feasible, and thus save the cost of the construction of a ditch.

6. An appropriator of water for irrigation purposes has a reasonable time in which to apply water to his land after conducting it to the point of intended use.

7. *Held,* under the evidence, that a period of twenty-four years is more than a reasonable time in which to reclaim the 160 acres of land owned by A., and more than a reasonable time to put the water intended for that purpose to a beneficial use.

8. *Held,* that the court erred in granting F. P. A. more than fifty inches of water with a priority as of April 1, 1884, and thirty inches with a priority of March 31, 1885, as he had reclaimed only about seventy acres of his land in twenty-four years.

9. The court erred in granting L. A. more than eighty inches of water, and her priority of right should date from March 31, 1885.

10. *Held,* that A. & L. were entitled to 100 inches of water for the irrigation of certain lands held by them with a priority of June 1, 1876, and no more, since they had only reclaimed 100 acres of their 240 acre tract in thirty-two years.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

Action to determine the amount and priorities of water rights for Canyon creek, Elmore county. Judgment and decree modified.

L. B. Green, Wyman & Wyman, and Richards & Haga, for Appellants.

A trespasser cannot by his wrongful act make a valid appropriation. (*McGuire v. Brown,* 106 Cal. 660, 39 Pac. 1060, 30 L. R. A. 384; *Benton v. Johncox,* 17 Wash. 277, 61 Am. St. 912, 49 Pac. 495, 39 L. R. A. 107; Wiel on Water Rights, 3d ed., sec. 221; *Sturr v. Beck,* 133 U. S. 541, 10 Sup. Ct. 350, 33 L. ed. 761; *Le Quime v. Chambers,* 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76; *Smith v. Deniff,* 24 Mont. 20, 81 Am. St. 408, 60 Pa. 398, 50 L. R. A. 741; *Prentice v. McKay,* 38 Mont. 114, 98 Pac. 1081.)

The right to change the point of diversion is a qualified and not an absolute right, and can be exercised only when it in no way injures subsequent appropriators. (*Fort Lyon Canal Co. v. Chew,* 33 Colo. 392, 81 Pac. 37; *Walker v. McGinness,* 8 Ida. 540, 69 Pac. 1003; *Hargrave v. Cook,* 108 Cal. 72, 41 Pac. 18, 30 L. R. A. 390 (see, also, note, 30 L. R. A. 265); *McGuire v. Brown,* 106 Cal. 660, 39 Pac. 1060, 30 L. R. A. 384; *Williams v. Altnow,* 51 Or. 275, 95 Pac. 201, 97 Pac. 539; *Proctor v. Jennings,* 6 Nev. 83, 3 Am. Rep. 240; *Union Mining Co. v. Dangberg,* 81 Fed. 73.)

A subsequent appropriator has a vested right as against his senior to insist upon a continuance of the conditions that existed at the time he made his appropriation. (*Baer etc. Co. v. Wilson,* 38 Colo. 101, 88 Pac. 265; *Handy Ditch Co. v. Louden Canal Co.,* 27 Colo. 515, 62 Pac. 847; *Lobdell v. Simpson,* 2 Nev. 274, 90 Am. Dec. 537; Mills' Irrigation Manual, p. 68.)

E. M. Wolfe, W. C. Howie, and Daniel McLaughlin, for Respondents.

It is the policy of the law to prevent the wasting of the water. (*Stickney v. Hanrahan,* 7 Ida. 424, 63 Pac. 189; *State*

*v. Twin Falls Canal Co.,* 21 Ida. 410, 121 Pac. 1039; *Hansen v. Larsen,* 44 Mont. 350, 120 Pac. 229; *Jacob v. Lorenz,* 98 Cal. 332, 33 Pac. 119.)

The change of the point of diversion would not in any event affect the priority of the person making the change, but would simply be compensated to the injured person in damages, or, if seasonably attacked, might be restrained by injunction. (*Hansen v. Larsen, supra,* and cases cited.)

SULLIVAN, J.—This action is to determine the amount and priorities of water rights from Canyon creek, Elmore county. Canyon creek rises in the Danskin mountains, about twenty miles north of Mountainhome, and flows in a southerly direction through the foothills and mountains about twelve miles out upon the sagebrush plain. At the mouth of the canyon is situated what is known as the Ake and Lockman ranch. From that point the creek flows in a southerly direction about three miles, where it divides, one fork going in a westerly direction and called the west fork of Canyon creek, the other in a southerly direction and called east fork of Canyon creek.

The appellant Bennett owns land about four miles south of where said stream forks and has taken a ditch out of the west fork of said creek near the junction, which ditch carries water to and upon his land. The appellant Dienst owns land about six miles south of the Bennett land and has been getting water out of the east fork of the creek for the irrigation of his land. The respondent, the Elmore Irrigated Farms Association, a corporation (which will hereafter be referred to for convenience as the Elmore Association), constructed, or had constructed, in 1891, a reservoir on Rattlesnake creek, several miles easterly from Canyon creek, which reservoir is supplied partly by water taken out by a feeder canal from Canyon creek at the mouth of said canyon, and partly from the waters of Rattlesnake creek. The Elmore Association claims to have acquired the water rights of several persons who had theretofore settled on Canyon creek, and have conveyed said water from Canyon creek through its said feeder

canal to its reservoir, and thereafter conveyed it through distributing canals to the lands theretofore irrigated by such water and other lands. The evident purpose of said change of method of conveyance of the water was to avoid the loss of seepage which occurred in the gravelly creek-bed, and it appears that the only irrigated lands on Canyon creek to which water is not thus conveyed by said Elmore Association are the lands of appellants Bennett and Dienst. It is claimed by appellants that the change in the point of diversion of the water rights of those who transferred their rights to the Elmore Association has greatly injured them, and it is also claimed by appellants that before such association changed the points of diversion of said acquired water rights, the water which is now claimed by said Elmore Association flowed down the creek to the forks and helped to swell the volume of water in the creek at the forks, so that more water went down the west fork than is now possible with only a small amount of water at the forks, and it is contended that after the extreme high water recedes the company takes all of the water out through its said feeder canal and does not leave sufficient water in said channel to reach the appellants' lands. The respondent Ake first took water from the east fork of said creek, but after appellant Bennett's ditch had been constructed from the west fork, Ake abandoned his ditch from the east fork and constructed a new ditch, diverting water from the main creek above the forks, and it is contended that the court erred in giving Ake the same priority for his water which is taken out of the main creek as he was entitled to for water taken out of the east fork, and that the change in the point of diversion by Ake injured appellants. It appears that there was no conflict between Ake and Bennett when Ake took his water from the east fork, but when he changed his point of diversion, it is contended that Bennett was affected in the same manner as if Ake had changed his ditch from the east fork to the west fork.

After the Elmore Association had made its agreement with several of the respondents, whereby it was to furnish said parties water from its said reservoir in consideration of their

permitting said association to divert the water at the mouth of the canyon and thus change the point of diversion from said stream of the water rights of said respondents, it is contended that said change has greatly injured the appellants. The question is thus presented to the court whether such change in point of diversion may be made where others are injured thereby.

The appropriator of water, or his successor in interest, may change the place of diversion if the rights acquired by others are not thereby interfered with by the change and no injury results to other appropriators therefrom. (See sec. 3 of an act to regulate the use of water, Sess. Laws 1881, p. 267; sec. 3157, Rev. Stats. of 1887; and sec. 3247, Rev. Codes.) Sec. 3157, Rev. Stats. of 1887, was in force at the time the changes referred to were made. That section provides that an appropriator may change the place of diversion if others are not injured by such change. It thus clearly appears that the policy of the legislature was to permit a change in the point of diversion if such change injured no subsequent appropriator. A subsequent appropriator has a vested right as against his senior to insist upon a continuance of the conditions that existed at the time he made his appropriation, provided a change would injure the subsequent appropriator. (See *Baer Bros. etc. Co. v. Wilson,* 38 Colo. 101, 88 Pac. 265; *Handy Ditch Co. v. Louden Irr. Canal Co.,* 27 Colo. 515, 62 Pac. 847; Mills' Irrigation Manual, p. 68.)

Wiel on Water Rights, 3d ed., sec. 302, states as follows:

"A subsequent appropriator has a vested right against his senior to insist upon the continuance of the conditions that existed at the time he made his appropriation. 'A second appropriator has a right to have the water continue to flow as it flowed when he made his appropriation.' The subsequent appropriator is entitled to the surplus, and any attempt of the prior appropriator to make a sale of such surplus to someone else to the injury of existing appropriators, though subsequent, is of no avail."

Under the statute and decisions, a prior appropriator has no right to change the point of diversion when it will in any manner injure a subsequent appropriator.

(1) It is first contended that the court erred in awarding to Bennett 160 inches with a priority as of May 1, 1886, instead of 240 inches as of April 8, 1885. It appears from the evidence that the land owned by Bennett was first owned by one Tregaskis, and that he filed in the office of county recorder of Alturas county, which county then included Elmore county, a water right notice dated April 8, 1885, and the evidence shows that he and a man by the name of Field constructed a ditch, taking water from said Canyon creek upon the land now owned by Bennett, and that he raised a crop of about fifteen or twenty acres of barley or rye on the land that year; that said ditch was of sufficient capacity to carry water for the proper irrigation of said land and carried approximately 400 inches and has not been enlarged since Bennett bought Tregaskis' land and right therein in 1887. There is evidence which shows that Tregaskis was actually diverting water through said ditch in the fore part of May, 1885. That being true, his right would relate back to the 8th of April, 1885, the date of his notice, and the court erred in not giving him a right as of that date. Bennett's ditch is about four miles in length, and it is contended that the loss of water turned in at the head of the ditch is about one-half before it reaches the land, and that it requires an inch to the acre to properly irrigate said land after the water reaches the land, and that Bennett ought to have been awarded 240 inches at the head of his ditch. We are not disposed to change the finding of the court upon this point, for it stands every water user in hand to construct his ditch so that there will be the least possible waste of water, and no doubt by either piping or cementing portions of the ditch where the greatest waste occurs, Bennett can save much of his water. In the decision of this court in *Stickney v. Hanrahan,* 7 Ida. 424, 63 Pac. 189, it was held that water appropriated for irrigation must be measured at the point of diversion.

(2) It is next contended that the court erred in fixing John Dienst's priorities, 130 inches as of April 1, 1885, and 30 inches as of April 1, 1886. The evidence shows that Dienst entered his land in the fall of 1884 and that he first put water on the land in March, 1885, by putting a dam in the creek and running the water out through sloughs upon his land; that he irrigated about fifty or sixty acres that year in that way, but it is contended by counsel for respondents that as Dienst did not make a ditch to divert the water from said creek prior to April, 1886, but conducted it through sloughs, his right could not date prior to the completion of his ditch. There is nothing in that contention. This court has held in *Parke v. Boulware*, 7 Ida. 490, 63 Pac. 1045, that one may adopt as a part of his ditch a depression or slough. In case he can use such slough in place of a ditch through which to run water to irrigate his land, he may do so and thus save the cost of the construction of a ditch. The appellant Dienst constructed a dam and diverted the water into a natural channel, and thereby raised wild hay on fifty or sixty acres of his land, and thereafter constructed ditches. It is stated in 1 Wiel on Water Rights, sec. 388, that a person making an appropriation of water from a natural stream need not construct any headgate at the place of diversion, and if a simple cut will accomplish the purpose of diverting the water from the stream, it is, if accompanied with a beneficial use, a good appropriation as against others making a subsequent diversion and use.

Under the evidence, the court erred in not decreeing to appellant Dienst a water right for 160 inches delivered at the head of his ditch, as of March 31, 1885.

(3) It is next contended that Frank P. Ake owned individually 160 acres of land and that only about 70 acres of said land had been irrigated at the time of the trial. It appears from the evidence that Ake located on said land in 1883 and took water out upon the land in 1884, and constructed a ditch diverting water from the east fork of said creek, and that he irrigated a few acres from such ditch during the season of 1884. In 1885 he irrigated about ten acres altogether. Only about forty acres could be irrigated from

the first ditch made. He did not file on his land until March, 1885. In the fall of that year he constructed a new ditch, diverting water from the main ditch above the forks, and thereupon abandoned the old ditch constructed in 1884. He constructed the ditch in 1885, so that he could get water on more of his land than he could through the ditch constructed in 1884. Through the ditch constructed in the fall of 1885, he first used water upon his land in 1886. He could not irrigate more than forty or fifty acres of his land from the ditch first made, and from 1884 to the time of the trial (which was in 1908) he had only placed under cultivation about seventy acres of his entire tract of 160 acres, and the court awarded him 210 inches. Thus in a period of twenty-four years, he had reclaimed not quite half of his 160 acres of land, and the court awarded him 210 inches of water therefor, 135 inches thereof dating from April 1, 1884, and 75 inches as of March 1, 1885. This court held in *Conant v. Jones,* 3 Ida. 606, 32 Pac. 250, that an appropriator of water, after conducting the same to the point of intended use, had a reasonable time in which to apply it to such intended use. It was not intended by that decision to give an appropriator a quarter of a century in which to apply water to a beneficial use. Under the evidence the court erred in granting Frank P. Ake 210 inches of water. Under all the evidence we think said respondent is entitled to not more than fifty inches of water from April 1, 1884, and thirty inches from March 31, 1885.

(4) It is next contended that the court erred in awarding Laura Ake 160 inches as of March 15, 1885, for the irrigation of 160 acres of land. Said land was entered by her in November, 1884, and she irrigated a few acres thereof in 1885. Only about sixty or seventy acres of said 160 acres had been reclaimed or was under cultivation at the time of the trial of this case in 1908. It also appears that she receives her water through the same ditches as does her husband, Frank P. Ake, and it is contended that her water right should date from the spring of 1886 and be limited to eighty inches, which amount of water, it is contended, will be abundant for the irrigation of the sixty or seventy acres which has been

under cultivation in the twenty-four years that have elapsed since she first made her appropriation. Laura Ake and Frank P. Ake receive their water from the same ditch or ditches. The ditch constructed in 1884, some forty rods below said forks of said creek, diverted water from said east fork. The ditch which was constructed in the fall of 1885 and first used in 1886 did not divert water from the east fork but was higher up the stream and diverted water from the main channel above said forks. The reason for making that change, as testified to by Frank P. Ake, was that the new ditch would cover higher ground and a larger acreage and that there was a good head of water at the head of the last ditch constructed when there was not any at the head of the first constructed ditch down the stream. The evidence shows that Laura Ake first used water on her land in March, 1885, and irrigated during that season four or five acres thereof, which water she diverted from the stream through Frank P. Ake's ditch. In the fall of 1885 a new ditch was constructed that would cover more land, but water was not diverted through it until the spring of 1886. From all of the evidence it appears that she had only reclaimed about sixty or seventy acres of her 160 acre tract at the time of the trial of this case in 1908. It is the established rule of decision in this state that an appropriator of water for irrigation purposes, after conducting the water to the point of intended use, has a reasonable length of time to apply it to such intended use (see *Conant v. Jones,* 3 Ida. 606, 32 Pac. 250), and we think a quarter of a century is more than a reasonable time for that purpose, and from all of the evidence the court erred in granting Laura Ake more than eighty inches of water, which right should date March 31, 1885.

(5) Ake and Lockman were given 100 inches of water from June 1, 1876, and 140 inches from March 1, 1886. The land claimed by Ake and Lockman consisted of 240 acres of school land, being a part of section 36. It was purchased from the state at a public land sale on November 9, 1901. It appears from the evidence that a part of said land had been irrigated for about twenty-five years before it was purchased from the

state, and the respondents knowing that it was school land all of that time, cultivated it as if it were their own, taking all the proceeds therefrom during such period of time without paying any rental whatever to the state.

It is contended by counsel for appellant that the only persons who were entitled to divert water from said canyon creek for irrigation purposes were those "owning and claiming any lands situated on the banks of or in the vicinity of any stream" as provided by the 10th section of the act of the legislature of the territory of Idaho relating to water rights. (See Sess. Laws 1881, p. 267.) Said section is as follows:

"All persons, companies, and corporations, owning or claiming any lands situated on the banks or in the vicinity of any stream, shall be entitled to the use of the waters of such stream for the purpose of irrigating the land so held or claimed."

In 1876 when a part of said Ake and Lockman land was first irrigated, the land did not belong to the state, for the reason that Idaho was then a territory and not a state. However, sections 16 and 36 of each township had been reserved for school purposes by the provisions of sec. 1946, Rev. Stats. of the U. S. Idaho was not admitted as a state until about fourteen years after the first irrigation of said land. Under the Idaho admission act, secs. 16 and 36 in each township were granted to the state as school lands. It appears from the evidence that about 100 acres of said land claimed by Ake and Lockman had been reclaimed in 1876 and was irrigated and produced a crop each year from that date until Idaho was admitted as a state. Ake and Lockman continued to cultivate and crop said land from the time Idaho became a state until the 8th of November, 1901, when they purchased said land from the state. They were at least claiming the right to the possession of said land during all of that time. And after Idaho became a state, the state was then the only party that could complain of their holding, cropping and cultivating said land. The water they used each year during that time for the irrigation of said land was certainly not used by any other person. Under all of the facts, we conclude that they

are entitled to one hundred inches of water for the irriga-
tion of said land with a priority as of June 1, 1876, and no
more, as the evidence shows they had irrigated only about
one hundred acres of the land up to the time this action was
tried in the district court.   Conceding that sufficient water
had been taken out on said land in 1876 to irrigate the entire
tract, they would certainly not have been entitled to more
than sufficient to irrigate the amount of land they had re-
claimed in the thirty-two years up to the date of the trial,
which was in 1908, and thirty-two years was certainly more
than a reasonable time for the purpose of reclaiming said
tract of land.   If they reclaimed only 100 acres in thirty-two
years, at that rate per annum it would require a half century
to reclaim the whole tract, and when this court laid down the
rule in *Conant* v. *Jones,* 3 Ida. 606, 32 Pac. 250, that an
appropriator of water for irrigation purposes, after conduct-
ing water to the point of intended use, had a reasonable time
in which to apply it to such use, it did not intend to hold that
a half or even a quarter of a century was a reasonable time for
that purpose.   As to what is a reasonable time must be deter-
mined upon the facts of each case.

(6) Some question is raised as to the water right of C. T.
Rohrer, which right had been decreed to the Elmore Associa-
tion with a priority as of May 1, 1885, for 230 inches.   The
evidence is conflicting in regard to this right.   Rohrer testifies
that he with three other parties constructed a ditch in April,
1885, and that said ditch would cover about 230 acres of his
land, and that he first turned water on said land through said
ditch in the latter part of April, 1885.   This evidence sustains
said finding of the court.

If the Elmore Association has procured the rights of other
appropriators on said stream and diverted the water at the
mouth of the canyon and turned it into its reservoir, it must
let sufficient water pass down the stream to give each of the
appellants at the head of his ditch the amount of water above
awarded to them.

As above held, the appellant Bennett is entitled to have
delivered to him at the head of his ditch 160 inches of water

with a priority as of April 8, 1885, and the decree of the trial court must be modified to that extent. The appellant Dienst is entitled to a water right of 160 inches with a priority as of March 31, 1885, the water to be delivered at the head of his ditch and the decree must be modified accordingly.

As to the other rights referred to in this opinion, the decree must be modified as above indicated and the cause is remanded, with instructions to the trial court to amend its findings and decree in accordance with the views herein expressed.

Costs are awarded to the appellants.

Stewart, C. J., and Ailshie, J., concur.

### ON PETITION FOR REHEARING.

#### (August 27, 1912.)

SULLIVAN, J.—A petition for a rehearing has been filed in this case, in which it is earnestly contended that Laura Ake's water right of eighty inches should be dated as of March 15, 1885, instead of March 31, 1885, as held by this court in the original opinion.

Upon a re-examination of all the evidence in regard to her water right, we have concluded to amend or modify the former opinion in regard to her said water right to date from March 15, 1885, instead of March 31, 1885, as originally held. The record contains some evidence that the water was first applied to her land about the middle of March, 1885. The original opinion of this court in this case will therefore be modified as above indicated, dating Laura Ake's right as of March 15, 1885. In this view of the case, it will not be necessary to grant a rehearing, as all that was asked for by the rehearing is hereby granted.

Stewart, C. J., and Ailshie, J., concur.