(December 20, 1900.)

STICKNEY v. HANRAHAN.

[63 Pac. 189.]

WATER RIGHTS—TRANSCRIPT ON APPEAL.—Documentary evidence used
    upon a trial to be used upon appeal must be incorporated into a
    statement or bill of exceptions, and such statement or bill of excep-
    tions duly settled.
MOTION TO STRIKE.—A motion to strike from the transcript upon ap-
    peal from a judgment documentary evidence used upon the trial,
    but which has not been incorporated into a statement or bill of
    exceptions, as required by sections 4430, 4441, and 4442 of the
    Revised Statutes, will be sustained.
STATEMENT AND BILL OF EXCEPTIONS.—Judgment was rendered Janu-
    ary 2d, plaintiff perfected his appeal therefrom January 5th, and
    served his proposed "statement and bill of exceptions on appeal
    from final judgment" January 26th; afterward, and on July 24th,
    defendants, without serving any proposed amendment upon the
    plaintiff, presented to the judge proposed amendments to plain-
    tiff's said bill of exceptions, consisting of a number of specifica-
    tions of insufficiency of the evidence to support certain findings,
    and the judge allowed said proposed amendment, over the objec-
    tions of the plaintiff. *Held,* that the allowance of such proposed
    amendment was error.

FINDINGS.—When the transcript upon appeal only contains a portion of the evidence introduced and used upon the trial, the findings of fact made by the trial court will not be disturbed on the ground that such findings are not supported by the evidence.

SAME.—A finding which is contrary to facts stated in the pleadings, and a decree following such finding may be modified on appeal.

PLEADINGS—CONJUNCTIVE DENIALS.—A denial in the answer of several facts pleaded in a verified cross-complaint conjunctively, the denial being also general, is bad under the code which requires such denials to be specific.

WASTE OF WATERS.—A statute making it a misdemeanor to waste waters by diverting the same from a stream into depressions or dry channels, held to be in line with a well-defined public policy that existed before the enactment of such statute.

APPROPRIATION AND DIVERSION OF WATERS.—Waters that are appropriated for irrigation purposes are to be measured to the several claimants, under the law, founded on necessity, at the point of diversion.

WATERS TO BE MEASURED AT POINT OF DIVERSION—IMPERFECT DECREE—MODIFICATION OF DECREE.—A decree settling the rights of claimants to the waters of a stream, which does not designate the point of diversion as the point at which the water of the several claimants is to be measured, is imperfect, and may, upon appeal, be modified in that particular.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

Charles Wade Stickney, for Appellant.

At and long after the time of plaintiff's purchase from Smith, the state of the law governing this right is shown by many cases in several of the western states. In *Nevada Water Co. v. Powell,* 34 Cal. 109, 91 Am. Dec. 685, the court says that the first appropriator is entitled to use and enjoy the water to the full extent of his original appropriation. This has been followed in *Lobdell v. Simpson,* 2 Nev. 274; *Ophir Silver Min. Co. v. Carpenter,* 4 Nev. 543, 97 Am. Dec. 550; *Barnes v. Sabron,* 10 Nev. 217, 90 Am. Dec. 537; *Paige v. Rocky Ford Canal Co.,* 83 Cal. 94, 21 Pac. 1102, 23 Pac. 875.) In *Coonradt v. Hill,* 79 Cal. 587, 21 Pac. 1099, it is held that the prior diverter of water from its natural channel by a completed ditch prior to the vesting of subsequent rights is en-

titled to all the water so diverted. This has been followed
in *DeNecochea v. Curtis,* 80 Cal. 397, 20 Pac. 563, 22 Pac.
198; *Burrows v. Burrows,* 82 Cal. 564, 23 Pac. 146; *Ramelli
v. Irish,* 96 Cal. 217, 31 Pac. 41; *Wells v. Mantes,* 99 Cal. 584,
34 Pac. 324; *Drake v. Earhart,* 2 Idaho, 750, 23 Pac. 541;
*Nevada Ditch Co. v. Bennett,* 30 Or. 59, 45 Pac. 472, 60 Am.
St. Rep. 777; *Hill v. Newman,* 5 Cal. 445, 63 Am. Dec. 140.
In *Dodge v. Marden,* 7 Or. 457, the court say that water
rights are upheld by United States statutes, and belong to real
estate, and hence are not lost by nonuser not amounting to
abandonment. In *Dexter v. Jefferson Paper Co.,* 50 N. Y.
Supp. 557, 22 Misc. Rep. 389, the nonuser of a water right
gives no ground for the acquisition of his rights by others,
for he is not obliged to assert his rights until he wants
to use the water. (*Integral Q. Min. Co. v. Altoona Min. Co.,*
75 Fed. 379; *Sloan v. Glancy,* 19 Mont. 70, 47 Pac. 334;
*Brown v. Mullins,* 65 Cal. 89, 3 Pac. 99; *Green v. Carotta,* 72
Cal. 269, 13 Pac. 685; *Smith v. N. Canyon Water Co.,* 16
Utah, 194, 52 Pac. 283; *Unger v. Mooney,* 63 Cal. 586, 4 Am.
St. Rep. 100.) The idea of segregating the part applied to
a beneficial purpose from the part running in the ditch and
subject to an allegation of nonusage, and liable to be legally
withdrawn from the owner's control as a penalty for non-
usage, never entered the heads of either the lawmakers or the
appropriators, and there is nothing in the statutes that indicate
such an idea. On the contrary, the first law in 1881, and
the Revised Statutes of 1887, cannot use plainer or less am-
biguous language when they say that the appropriator "shall
be taken to have secured all the water said works are capable
of conducting, and not exceeding the amount claimed." It
does not say, as this decree virtually says, "not exceeding the
amount used." (*Hillman v. Hardwick,* 3 Idaho, 255, 28 Pac.
440; *Barrows v. Fox,* 98 Cal. 63, 32 Pac. 811.) In *Conant
v. Jones,* 3 Idaho, 606, 32 Pac. 250, the principle is laid
down as follows: "A decision that would defeat persons acting
in good faith and using reasonable diligence, from securing
the full benefit of the water appropriated, would be most un-

just and inequitable. In the meantime, however, he is only entitled to such water, from year to year, as he puts to a beneficial use. A person may add from year to year acreage to his cultivated land, and increase his application of water thereto for irrigation as his necessities permit, until he has put to a beneficial use the entire amount of water at first diverted by him and conducted to the place of intended use."

John A. Bagley and Angel & Angel, for Respondents, cite no authorities not cited by appellant.

L. L. Sullivan, for Respondents Hanrahan and Taylor, cites no authorities on the points decided.

Per CURIAM.—This action was commenced by the appellant, as plaintiff, in the district court of the fourth judicial district, in and for Blaine county, against the respondent James N. Hanrahan and seventeen others, as defendants, to settle the rights and priorities of all the parties to the use of the waters flowing in that certain stream, known as "Antelope creek." The pleadings are very voluminous, eight of the defendants answering separately and filing cross-complaints. The other defendants failed to appear. The cause was tried by the court, findings of fact made, and the decree of the court entered settling the rights of the parties and determining their priority, as follows: The plaintiff, Stickney, three hundred and twenty inches, his right dating from September 30, 1879. Defendant Warren, sixty inches, dating from September 30, 1879. The defendant Hoalst, one hundred and thirty inches, dating from September 30, 1879. The defendant Hanrahan, one hundred and fifty inches, dating from October 15, 1893, to be of equal right and claim with the above-named plaintiff and above-named three defendants. The defendant Kinney, ninety inches, and the defendant Richardson, seventy inches, both dating from May 1, 1880. The defendant Green, one hundred and twenty-five inches, dating from November 15, 1883. The defendant Jenkins, eighty inches, dating from August, 1886. The defendant Taylor one hundred inches, dating from May 1, 1888. The said defendants moved for a new trial upon a

statement or bill of exceptions proposed by the plaintiff and settled by the court, which motion for new trial was on the twenty-fourth day of July, 1900, by the district judge denied.. The plaintiff appeals from the judgment to this court. Upon the record brought here upon plaintiff's appeal, the defendants: cross-appealed.

The respondents moved to strike from the transcript all that part thereof, which includes exhibits used as evidence upon the trial, commencing at folio 401, on page 116, and ending at folio 557, on page 162, for the reason that said exhibits were not incorporated into a bill of exceptions or statement on motion for a new trial, and therefore not a part of the record upon appeal. This motion must be, and is, sustained. Upon appeal from a final judgment, such as the one appealed from in the case before us, there are only two ways of bringing the evidence before this court for review, viz., by incorporating the same into a bill of exceptions, or by incorporating the same into a statement of the case on motion for a new trial. (See Rev. Stats., secs. 4441, 4442, 4818.) It must be kept in mind that this is an appeal from a judgment.

A number of assignments of error are made by both parties to this appeal,. nearly all of them being based upon the insufficiency of the evidence. Inasmuch as the record before us, the so-called statement or bill of exceptions, shows that all of the evidence introduced upon the trial of the case is not contained in the record, we feel unauthorized, under established rules of practice and the statutes of this state, to disturb any of the findings of fact made by the lower court upon the ground that such findings are not supported by the evidence. A careful examination of what is designated in the record as "Statement and Bill of Exceptions on Appeal from Final Judgment" convinces us that the appellant intended to incorporate into the same all of the evidence that he deemed necessary to be considered upon appeal. But he clearly failed to do so. No bill of exceptions was proposed or settled on behalf of the defendants. The decree was entered January 2, 1900. On January 5, 1900, the defendant Hanrahan, served notice of intention

to move for a new trial. On January 6, 1900, the plaintiff, Stickney, served and filed notice of appeal, and caused to be executed and filed an undertaking on appeal from the judgment. Thereafter the appellant Stickney proposed the so-called statement and bill of exceptions. On July 24, 1900, said statement or bill of exceptions came before the district judge for settlement. At that time the said defendants proposed an amendment to the plaintiff's bill of exceptions, which amendment consisted of a number of specifications of error touching the sufficiency of the evidence to establish certain facts found by the court in its findings of fact. It appears from the record that this proposed amendment offered by the defendant was accepted by the court, and incorporated into plaintiff's bill of exceptions, over the plaintiff's objections, to which the plaintiff there and then duly excepted, and incorporated such exceptions into a bill of exceptions, which was there and then duly allowed and settled by the district judge; the same being in words and figures as follows, to wit: "At a hearing before the judge of said court for settlement of the statement on appeal and bill of exceptions, defendants applied to the court to insert amendments not hitherto filed nor served, being solely specifications of error as to evidence, and plaintiff moved the court to strike out the same on the ground that the amendments were not served in time; the plaintiff's draft having been served January 26, 1900, and the defendants' amendments never having been served before the hearing for settlement of statement, July 24, 1900. The court overruled the motion to strike out defendants' amendment, being the defendants' specifications of error as to evidence, whereupon the plaintiff excepted. This bill of exceptions settled and allowed July 24, 1900. C. O. Stockslager, District Judge." This bill of exceptions was served and filed the same day that it was settled. On same day the defendants' motion for a new trial was denied.

In our view, the defendants have neither a bill of exceptions nor statement of the case within the purview of sections 4430, 4441, 4442, 4818, of the Revised Statutes; what is designated as the statement or bill of exceptions being in fact a narration

of a considerable portion of the evidence introduced upon the trial, with plaintiff's specifications of particulars wherein the evidence was insufficient. Under the provisions of said sections named, a draft of a bill of exceptions into which are incorporated exceptions taken at the trial must be proposed and served within ten days after the entry of judgment, if the action were tried with a jury, or within the same time after receiving notice of the entry of judgment if the action were tried without a jury, or such further time as the court in which the action is pending, or judge thereof, may allow. Then the adverse party must, within ten days after such service, propose such amendments thereto, if any, as he may desire, and serve the same upon the other party. And, in case of a statement of the case, such statement must be proposed and served within the same time as above designated, in the case of a bill of exceptions; and, after service of such statement, proposed amendments to such statement must be served upon the other party within ten days. We do not understand upon what authority the court permitted plaintiff's bill of exceptions to be amended by a proposed amendment presented by the defendants six months after the trial, into which are incorporated specifications of error on the part of the defendants upon the ground that the evidence was insufficient to establish certain facts found by the court. It has been suggested that said specifications of error contained in defendants' proposed amendments to plaintiff's statement might be regarded and treated as defendants' bill of exceptions. Without determining this point, it is sufficient to say that, if that view should be adopted, then the defendants' bill of exceptions was presented six months after judgment, and nearly six months after the plaintiff had appealed, without service of any proposed draft thereof having been theretofore made. To our minds, the defendants had no bill of exceptions or statement of the case upon which to base a motion for a new trial, and the appeal of the defendants from the order denying a new trial is without merit, as said motion for a new trial was properly denied. We do not wish to be understood as holding that the defendants could

not adopt a statement or bill of exceptions proposed by the plaintiff, or avail themselves of any erroneous action of the court shown therein; but what we do hold is that the record before us does not show that the defendants had saved any exceptions, or proposed or served any statement or bill of exceptions, as required by our code.

What has been said shows that this appeal, or rather, both appeals must be determined upon the judgment-roll. Both parties appeal from the judgment. Only one inquiry remains for consideration: Do the pleadings support the judgment, and are the findings within the issues raised by the pleadings?

The plaintiff (appellant in the original appeal) contends that the court erred in failing to find that he was entitled to two thousand five hundred inches of water appropriated by him in 1886 by notice posted at a point on one of his ditches. But, for the reasons hereinbefore given, we are not at liberty to review the evidence upon that point. But, if we could do so, we would be compelled to hold that the action of the lower court was correct, under the evidence, for the reason that the plaintiff's own testimony shows that, fourteen years after posting his notice, claiming his water for power purposes, he had not erected or put into operation the sawmill to run which he made the appropriation. He has not, so far as this claim for water for power purposes, brought himself within the rule laid down by this court in *Conant v. Jones,* 3 Idaho, 606, 32 Pac. 250, and *Mahoney v. Neiswanger,* 6 Idaho, 750, 59 Pac. 561, as he has not proceeded with reasonable diligence. Plaintiff stated on the trial as follows: "I knew that for power purposes the water in Antelope was inadequate, and I went up and took out a river ditch." It is agreed by all parties that the parties hereto are located in proximity to Lost river.

The plaintiff complains that the findings of the trial court gave to the respondent Charles R. Hoalst a right to the waters decreed, dating from September 30, 1879, equal in time with the right of the plaintiff, contrary to the pleadings. This contention is well grounded. In his cross-complaint said defendant Hoalst, for the fourth paragraph, alleges "that in the

month of May, A. D. 1883, the said defendant, by his grantors
and predecessors in interest, at a point on said Antelope creek
situated about one-quarter of a mile in a westerly direction from
the lands above described [his lands], and afterward changed
to a point about two miles from said lands, located, appro-
priated, and diverted, for the irrigation of the lands hereinbe-
fore described, said one hundred and sixty inches of water of
said Antelope creek, and by means of dams, canals, and ditches
diverted and conducted said water to and upon said lands, for
the purpose of irrigating the same, as far as the said amount
of water would properly irrigate said lands, and that the said
one hundred and sixty inches of water covers and irrigates one
hundred and sixty acres of said lands." Plaintiff, in his an-
swer to this cross-complaint, attempts to deny the allegations
of said fourth paragraph, in the following words: "For an-
swer to paragraph 4 of the said cross-complaint, the plaintiff
says that he has not sufficient knowledge or information to
enable him to answer the fourth paragraph of the said com-
plaint, and, basing his denial on that ground, denies all the
statements and allegations in said paragraph fourth." This
is not such specific denial as is required by our code to a
verified cross-complaint, and the record shows that the said
cross-complaint of the defendant Hoalst was verified. If it
can be regarded as a denial, it must be considered as a general
conjunctive denial, and for that reason insufficient to raise an
issue as to the matters stated in paragraph 4 of the said cross-
complaint, but it may be that defendant Hoalst waived this
question by failing to raise it. We must hold that the finding
that the appropriation of the said defendant Hoalst was made
in 1879 is not supported by the pleadings, and that said find-
ing should have been that said appropriation was made May
30, 1883. Said finding and decree should be modified accord-
ingly.

The learned counsel for the defendant Hanrahan, who is
one of the appellants in the cross appeal, complains that the
decree in this case is imperfect, in that it does not specify the
point at which the water decreed to the several parties should

be measured. We think this contention is well founded. Under the law, water of all claimants must be measured at the point where such water is diverted from the natural channel of the stream from which it is taken. This is matter of necessity, demanded by public policy. It is the policy of the law to prevent the wasting of water. Our legislature has made it a misdemeanor to waste water. By act of February 25, 1899 (Acts 1899, p. 336), it is provided that "any person or persons who shall willfully or wantonly waste any of the waters of any stream . . . . or by allowing such water to waste by running into depressions or dry channels so that the same cannot be used for irrigation nor reach the original channel of the stream from which it has been diverted, is guilty of a misdemeanor." This statute is in line with a well-defined policy that has existed in this jurisdiction from its earliest period. The findings and decree show that the plaintiff and several of the defendants who appear in this court divert their water from Antelope creek into what is called in the findings the Smith & Dixon channel or ditch, and each afterward takes from said channel or ditch. While we will not review the evidence in the record to see if it supports the findings, for the reasons hereinbefore given, yet we do say that it shows that what is called the Smith & Dixon channel is an old depression or former channel, which spreads out to considerable width at places, and that the evidence shows that much water is wasted by its use, and that such waste can be prevented by the parties by constructing a ditch.

These two errors—that one relating to the date of the water right of the defendant Hoalst, and the omission to designate the point of diversion as the place where said waters allotted the different parties shall be measured—are the only errors, in our opinion, shown by the judgment-roll. The cause is remanded to the district court, with instructions to modify its findings and decree in the two particulars hereinbefore designated, and the said judgment is in all other respects affirmed. The plaintiff (appellant) must bear the cost of printing that part of the transcript that has been stricken out. All the

other costs of these appeals shall be borne by the parties plain- tiff and defendant, severally, in the same proportion as the water allotted to them, severally, bears to the whole amount of water apportioned in and by said decree. But none of the parties to be allowed for cost of printing more than forty pages of brief, as provided in paragraph 1 of rule 6 of this court. (32 Pac. vi).

## ON REHEARING.

### (January 4, 1901.)

Per CURIAM.—The appellant has filed a petition for re- hearing, in which it is urged that the original opinion is incon- sistent in some particulars. For instance, it is urged that the defendants Kinney and Richardson were, in the findings and decree of the lower court, given water rights dating from 1880, when in their respective pleadings they only claimed from the year 1887. Upon an inspection of the pleadings in this case, we find that this contention is correct. There was no com- plaint made at the hearing, orally, or in the printed briefs, that the findings as to the water rights of said defendants Kinney and Richardson were contrary to the pleadings; hence our attention was not called specifically to that fact. And at this time we would not molest the former decision, were it not for the fact that the modification of the findings and decree ordered as to the defendant Hoalst, changing the priority of his right, make his subsequent in time to the defendants Kin- ney and Richardson, and thus work a hardship on him, by applying one rule to him, and refusing to apply it to the de- fendants Kinney and Richardson. Both of said defendants Kinney and Richardson allege their appropriations to have been made in July, 1887. Hence, under the rule applied to defendant Hoalst, the findings and decree of the lower court must be modified so as to date their appropriations and rights thereunder from July 31, 1887, and it is so ordered.

Appellant also complains that the place of measurement of the waters allotted to the respective parties has been designated as the point of diversion of such waters from the channel of the

stream from which the same is taken. We are unable to recede from the position taken in the original decision in relation to this question. The waters of all streams belong to the public. Rights to the use thereof for beneficial purposes may be, under the constitution and laws of this state, acquired and maintained, but the public is i. terested in the water and in its beneficial use. It is against the spirit and policy of our constitution and laws, as well as contrary to public policy, to permit the wasting of our waters, which are so badly needed for the development and prosperity of the state, and every act on the part of any individual claimant that tends to waste water is to be discouraged rather than encouraged. The necessity of measuring to each claimant, at the point of diversion from the natural stream, the waters appropriated and used by him, is apparent. A rehearing is denied.