(July 6, 1906.)

## JOHN CROWLEY, Respondent, v. CROESUS GOLD AND COPPER MINING COMPANY, Appellant.

[86 Pac. 536.]

MOTION TO STRIKE FROM RECORD—INSTRUCTIONS—AFFIDAVITS—MOTION TO SUPPLY RECORD WITH CERTIFICATE OF CLERK—OBJECTION TO COMPLAINT THAT IT DOES NOT STATE CAUSE OF ACTION.

1. The instructions given on the trial can only be reviewed in this court when they are saved by bill of exceptions, they being no part of the judgment-roll.

2. Affidavits purporting to show errors committed in impaneling the jury are no part of the judgment-roll, and can only be reviewed when saved by bill of exceptions.

3. The certificate of the clerk of the district court that certain affidavits were used on the application for a new trial, and that they were all the affidavits used, is not sufficient to authorize this court to consider such affidavits. Such certificate must be made by the trial judge or in an authenticated record certified by the

judge showing what papers were used on such application for new trial.

4. A certificate by the trial judge that ''I have this day settled the within statement in the manner marked by me in pencil, allowing the proposed amendments where so marked and disallowing them where so marked,'' is not sufficient to authorize this court to consider the statement on appeal, as it is not known that such certificate was made after the statement was engrossed.

5. An objection that the complaint does not state a cause of action first made in this court will not warrant the court in granting a new trial where it is shown that the complaint, even though inartistically drawn, states that the injury complained of resulted from the careless and negligent construction and operation of appellant's machinery and appliances used in appellant's mine, and further calls attention to the particular portion of such appliances that were defective.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District for Blaine County.   Hon. Lyttleton Price, Judge.

Respondent commenced his action for damages for personal injuries sustained while at work in appellant's mine.   Judgment for plaintiff, from which and an order overruling a motion for a new trial, the appeal is taken.   *Affirmed.*

McFadden & Broadhead, for Appellant.

A complaint in which a cause of action is stated for the recovery of damages for personal injuries should contain and state with precision an allegation or statement of the facts and circumstances from which it is shown that the defendant owed a legal duty to the plaintiff.   An allegation of a duty standing alone is insufficient.   (*Chicago etc. R. Co. v. Clausen,* 173 Ill. 100, 50 N. E. 680; *Gibson v. Leonard,* 37 Ill. App. 244, 349; *Angus v. Lee,* 40 Ill. App. 304.)

The pleader must state facts from which the law will raise a duty and show an omission of duty and resulting injury. (*Taylor v. Felsing,* 164 Ill. 331, 45 N. E. 161.)

A declaration for wrongfully and negligently injuring or killing another, without stating the facts constituting the neg-

ligence, ought to be held insufficient. (*Cotton Oil Co. v. Shamblin,* 101 Tenn. 263, 47 S. W. 496; *Chicago etc. R. Co. v. Harwood,* 90 Ill. 425.)

S. B. Kingsbury and A. A. Fraser, for Respondent.

The affidavits in the transcript, not being a part of the judgment-roll, nor incorporated into any bill of exceptions, should be stricken from said transcript. (*State v. Larkins,* 5 Idaho, 200, 47 Pac. 945; *Rich v. French,* 3 Idaho, 727, 35 Pac. 173; *Stickney v. Hanrahan,* 7 Idaho, 424, 63 Pac. 189; *Fish v. Benson,* 71 Cal. 431, 12 Pac. 454.)

On appeal from order heard upon affidavits the only proper mode of authenticating such affidavits on appeal to this court is by bill of exceptions. (*Somers v. Somers,* 81 Cal. 608, 22 Pac. 967.)

The instructions set out in the transcript should be stricken out, as they are not embodied in a bill of exceptions and are not part of the judgment-roll. (Rev. Stats. 1887, sec. 4456.)

The purported bill of exceptions in this case, or statement on motion for a new trial, should be stricken from said transcript, as said statement is not properly authenticated by the trial judge, and the record shows that said statement or bill of exceptions was not authenticated by the judge after being engrossed, as required by law and the practice of this court. It is the duty of the appellant to furnish the supreme court a complete, clean, properly arranged and properly authenticated transcript. (*Kimble v. Semple,* 31 Cal. 657; *Thompson v. Patterson,* 54 Cal. 547; *Cosgrove v. Johnson,* 30 Cal. 509.)

The proper practice is to engross a statement and have the authentication of the judge indorsed on engrossed statement. (*Pence v. Lemp,* 4 Idaho, 526, 43 Pac. 75; *Hattabaugh v. Volmer,* 5. Idaho, 23, 46 Pac. 831.)

The statement on motion for a new trial and amendments, as allowed by the court, must be engrossed into one, and authenticated by signature of the judge in order to be regarded as the statement required by law and to be considered on

appeal. (*Smith v. Davis,* 55 Cal. 26; *Sawyer v. Sargent,* 65 Cal. 260, 3 Pac. 872.)

Clerk's certificate that statement is the same which was used on motion for a new trial is entitled to no weight, as the clerk is not authorized to verify a statement in that form. (*Fee v. Starr,* 13 Cal. 170; *People v. Bartlett,* 40 Cal. 142.)

STOCKSLAGER, C. J.—This appeal is from the district court of Blaine county. Respondent as plaintiff commenced his action in that court, alleging that he had been damaged in the sum of $5,000, by reason of certain injuries sustained by him while working in the mine of defendant—appellant.

The first allegation is that defendant is a corporation organized and existing under and by virtue of the laws of the state of Wyoming, and is engaged in the business of mining in Blaine county, Idaho.

The second allegation is that defendant is the owner and operator of that certain mining property called the "Croesus Mine."

Allegations numbered 3, 4 and 5 are as follows:

"III. That plaintiff was, on the thirtieth day of June, 1904, an employee of defendant, was then set to work mining in said mine, and was by the defendant set and placed at work at the bottom of a deep shaft, about eleven hundred feet below the surface of the earth and collar of said shaft, and as such miner and employee was, on said thirtieth day of June, 1904, employed, set to work and placed by defendant at bottom of such said shaft, where the work and duty of plaintiff as such employee, and he was so directed by defendant, was to help to fill the hoisting bucket used and then being used to hoist the rock, dirt, ore and materials from the said bottom of said shaft up through the shaft to the top of the shaft and surface of the earth, and plaintiff was then and there so employed by and working for defendant, and under its direction, control and order. That it was then and there the work and duty of defendant, and a duty it owed this plaintiff so employed in carrying on such mining and in remov-

ing rock, earth, material and ore from said mine, to use, provide, maintain and employ, safe, suitable and proper machinery, plans, appliances, apparatus and materials for and in so doing and to employ competent, careful and skilled engineers, superintendents and foremen to make, set up, operate, install and keep in order said mine, shaft, machinery and all appliances and apparatus used and to be used for the purpose of removing rock, dirt, material and ore from said mine, and of lifting and elevating them in said shaft from lower to higher levels and especially in lifting large quantities of heavy material from great depths to the surface of the earth when its employees and this plaintiff were at work beneath the hoisting bucket, and appliances containing said materials and connected with the same; and when the hoisting bucket was loaded or filled with earth, rock, ore or other heavy materials, and was to be lifted or hoisted over and above plaintiff and other persons at work in bottom of said shaft, and was being so hoisted, it was the duty of defendant to use, employ, provide and allow used suitable, and only suitable, and safe plans, means, machinery, apparatus and appliances for such conditions and work and lifting, and to keep and maintain all in such suitable, safe and proper working condition, working properly and safely and working and operating in such manner as not to be likely to upset, or to fall, or to spill out the contents of said hoisting bucket when the same was above plaintiff and those working at bottom of said shaft, and to attend to and see to and effect that the earth, rock and dirt could be and was so being removed, raised and handled and by such appliances that it would not be apt to spill out or fall, and would not spill or fall and thus endanger the life and limb of plaintiff or of any person so working below.

"IV. That on said thirtieth day of June, 1904, plaintiff had been employed in said mine but five days and knew little of the conditions, state, safety or operation of said mine, or in said mine, or concerning the machinery, appliances or apparatus used and employed in said mine or in said shaft, and had little knowledge of the hoisting works therein or of the

operation of the hoist or of the acting and operating of the hoisting bucket; and plaintiff is not an engineer, is not a mechanic, is not a millman, and is not skilled in or concerning such or any machinery, or the operation thereof, and has had no experience in making, placing, using or operating the same, and then and there had no use of, control over, work with or in connection with any of the machinery of said mine, or in or about said shaft, or concerning said hoist, or any of the apparatus for hoisting in said shaft, and had nothing to do, and never had had anything to do, with the operation of said hoist or of any of the machinery in, of or about said or any mine.   But plaintiff did then and there and at all times rely upon his reasonable expectation and belief, which belief he then had that defendant would use, install, employ and operate only safe, suitable, proper and properly operating machinery, apparatus and hoist, and not be negligent thereabout so as to render life and limb of himself and others so then employed reasonably safe.   That plaintiff did not knowingly assume or undertake any place, work or occupation of extra hazard to life or limb and did not assume knowingly any risk or hazard at all, of, or concerning the hoisting apparatus not being safe or not operating properly and safely or the upsetting for any cause or reason of the hoisting bucket while in shaft high above him, and that no such risk was known of or to plaintiff or presented to mind of plaintiff or assumed by him.   Plaintiff was so employed by the defendant to use pick and shovel, and as a miner in the earth simply and not to do with, use, have control of or connection with any of the plans, machinery, apparatus or operation of any such in any way; and plaintiff was then and there digging and shoveling earth, rock and dirt at bottom of said shaft, which was of the nature of his employment by the defendant. And at said time, on said thirtieth day of June, 1904, the time of the occurrence of the accident and injury herein complained of, the plaintiff was in the prudent and careful discharge of the duties of his said employment, and wholly without fault or blame at such work at bottom of said shaft. And plaintiff was then and there ignorant of any defect or

of any incompetence, or of any want in any machinery or in operation of the same in said shaft, and had no fear of, and knew of no cause for fear of, any accident due to the upsetting of hoist bucket or of the falling of the same, or its contents, due to any defect.

"V. Yet the defendant corporation, not regarding their said duty on the said thirtieth day of June, 1904, at said mine in Blaine county, carelessly and negligently suffered and allowed the hoisting apparatus, the hoisting bucket and the means of controlling and guiding and lifting the same in and up said shaft in said mine to be and to remain unsafe, defective and insufficient, operating badly, unfit for use, and dangerous to those working below said bucket at bottom of said shaft, the cross-bar or cross-head and apparatus for guiding said bucket when being hoisted not working properly and not properly constructed and adjusted and adapted, but was so and such that it might and was apt to hang up and not follow the bucket so as to be in place to guide and control it, and the hoisting bucket was so hung, moved, lifted and used, and not properly guided and governed so that it might, could and was apt to catch, tip, upset and spill out its contents and endanger the life and limb of the persons below. All of which was known to the defendant but unknown to plaintiff, and of which the defendant had had notice and of which plaintiff had had no notice, and said such defects were dangerous to any person working below said hoisting bucket, however much care said workman might use. That the said defects in said hoist and in its operation were of such kind, nature and character, and had hitherto so worked and operated and failed to act properly that defendant, through its officers, agents, foremen and machine operators, must have known of the same, and have known that it was unsafe to work below in said shaft while said hoisting bucket was being lifted, or might have known of such defects and of said danger by the exercise of reasonable care and diligence. By reason of which neglect of duty by the defendant corporation, and the unsafe condition of said hoist, and the insufficient and not properly adjusted, fitted and operating cross-

bar or cross-head for guiding said bucket and by reason of the insufficient, unsafe, not properly working and operating hoist and hoist bucket in said shaft and mine, and by reason of the hoisting bucket not being properly guided and controlled it caught, upset and fell and emptied out its contents on said day down and upon the plaintiff while so at work at bottom of said shaft, where set to work by defendant, and by said bucket upsetting and tipping over, large quantities of earth and rock were let fall down said shaft from a great height above head of plaintiff, and then and there, while plaintiff was without fault and was exercising due care and caution, he was hit and struck by large pieces of rock and earth falling from said bucket down said shaft and his body was jammed, crushed, broken, bruised and wounded; his bones broken and he permanently injured; ribs broken and ribs fractured, the ilium mashed and broken; hip-bone broken, bruised and mashed and the muscles of plaintiff's hip, side and back bruised, injured and permanently impaired; his side and hip wounded, bruised and disabled; and he thereby became and was sick, sore, lame and disordered and has so continued for a long space of time, and from thence hitherto and still so continues, during all of which time plaintiff has suffered great pain of body and mind, and has been wholly prevented from doing any work or labor or business whatever, and is permanently lamed and disabled by reason of such said injury to plaintiff, damage in the sum of five thousand dollars.''

Defendant answered, putting in issue all the material allegations of the complaint, and further answering, in substance, averred that all the appliances used in and about the operation of said mine were at the time of the accident complained of, and for a long time prior thereto, such as are and were in general use in the carrying on of mining operations throughout the state of Idaho. That in selecting all the machinery and appliances at said mine, and especially the said cross-bar in the cross-head, it used extra care and caution, and during all of the time the same was used made daily inspections of all parts of said machinery for the purpose of de-

tecting any defects there might be in said machinery, and in order to keep the same in repair. That it used every possible means to avoid and prevent accidents. It is then alleged that the plaintiff was himself guilty of negligence in standing directly beneath the bucket and hoist while the same was being hoisted to the surface, and that but for the said negligence of the plaintiff he would not have been injured.

Upon these issues the case was tried, the jury returning a verdict in favor of the plaintiff in the sum of $3,000. The appeal is from the judgment and an order overruling a motion for a new trial.

Counsel for respondent moved to strike out all that portion of the transcript containing the instructions given and refused by the court, for the reason that said instructions are no part of the judgment-roll, and are not embodied in any bill of exceptions. Respondent's counsel also moved to strike from the transcript the affidavits of Jesse B. Root and M. D. Barstow, for the reason that such affidavits form no part of the judgment-roll and are not embodied in any bill of exceptions.

Counsel further moved to "strike out from said transcript all that part of said transcript commencing on page 66 and ending at the bottom of page 200; said portion of said transcript purporting to be the statement used on motion for a new trial herein and bill of exceptions, for the reason that said purported statement or bill of exceptions was not signed, settled and allowed by the trial judge after being engrossed; and it is impossible to determine whether or not the amendments to said statement are incorporated therein as allowed by said court, and whether or not the amendments which were disallowed have been omitted from said transcript. And for the further reason that there is no proper certificate of the said trial judge showing that any statement on motion for a new trial or bill of exceptions was ever settled and allowed by said trial judge as required by law and the rules of this court."

This motion was sustained for the reason that the affidavits of Jesse B. Root and M. D. Barstow have no place in the judg-

ment-roll, neither do the instructions constitute any part of the judgment-roll under the provisions of section 4456, subdivision 2, Revised Statutes of 1887.

If appellant desired to have the alleged errors set out in the affidavits above referred to, and the instructions given, refused or modified, reviewed by this court, it could have been done by bill of exceptions settled by the trial court, and filed with the clerk, when it would have become a part of the judgment-roll. This question has been frequently passed upon by this court. (See *Rich v. French*, 3 Idaho, 727, 35 Pac. 173; *State v. Larkin*, 5 Idaho, 200, 47 Pac. 945; *Stickney v. Hanrahan*, 7 Idaho, 424, 63 Pac. 189; *Williams v. Boise Basin Mining & Development Co.*, 11 Idaho, 233, 81 Pac. 646.) The statement on motion for a new trial or bill of exceptions—no matter which it is termed—must be stricken from the transcript as it is not properly authenticated by the trial judge, as shown by the record, after it was engrossed. The only authentication we find in the record is as follows: "I have this day settled the within statement in the manner marked by me in pencil, allowing the proposed amendments where so marked, and disallowing them where so marked. Lyttleton Price, Judge. Oct. 11, 1905."

It is evident this certificate was made before the transcript was engrossed, and we would be at a loss to know what proposed amendments were allowed and what not allowed.

In *Hattabaugh* v. *Vollmer*, 5 Idaho, 23, 46 Pac. 831, this court said: "When amendments are offered and allowed to a proposed statement on motion for a new trial, the statement as amended must be engrossed before this court will consider such statement." The statement on motion for a new trial and amendments as allowed by the court must be engrossed into one and authenticated by the judge in order to be regarded as the statement required by law and to be considered on appeal. This motion must be sustained.

On the twentieth day of June, 1906, after respondent's counsel had argued and submitted his motions to strike from the transcript the affidavits of Jesse B. Root and M. D. Barstow, and all of the transcript excepting that part that con-

stitutes the statutory judgment-roll, counsel for appellant filed his motion "for leave to have the clerk of the district court of Blaine county, Idaho, from which said district court this appeal is prosecuted, amend his certificate to the transcript on appeal herein, so that it will show that the affidavits of Jesse B. Root and M. D. Barstow . . . . were the only affidavits used in the said district court upon the hearing of the appellant's motion for a new trial." This motion was overruled for the reason that such certificate from the clerk would not be sufficient. A certificate from the judge would fill the requirements of the statute. This leaves the case for review on the judgment-roll alone.

In his oral argument in this court learned counsel for appellant insisted that the amended complaint failed to state a cause of action. He says paragraph 3 of the complaint only states conclusions of law and the duty of the master, and that paragraph 4, "wherein it is set forth that the servant was unskilled in the work in which he was engaged; that he had been at work but a few days and knew nothing of the work he was employed to perform, and that he did not assume any risk. . . . . The law determines whether a servant does or does not assume a risk in entering the service of another."

On the other hand, we have the learned gentlemen who represents the respondent in this court insisting that were paragraphs 3 and 4 eliminated from the complaint or treated as surplusage, still paragraph 5 sufficiently states a cause of action of the character attempted to be set out by the complaint to inform the appellant just what it was to meet in the court below. That the negligence and carelessness of appellant in the construction and handling of their machinery and apparatus in and about the said Croesus mine, and especially the appliances for the use and operation of the bucket in use in the perpendicular shaft were defective and dangerous by reason of their faulty construction and operation.

Again, it is urged that appellant cannot be heard to object to the sufficiency of the complaint in this court, having waived such defect, if any, by failure to demur in the court below. Notwithstanding section 4178, Revised Statutes, there

is much force and reason in this contention. Section 4178 provides: "If no objection be taken either by demurrer or answer the defendant must be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action." If this section is to be literally construed and followed, it practically does away with the necessity of a demurrer in the lower court on the ground that the complaint "does not state facts sufficient to constitute a cause of action." By the terms of this section the defendant may go to trial on a complaint that does not state a cause of action, and, after a tedious and expensive hearing, appeal, and for the first time raise the question of the sufficiency of the complaint in this court. This is not justice, and the legislature should repeal or modify this section to the extent that a failure to demur in the court below waives the right to be heard to object in the appellate court. All questions affecting the pleadings should be settled in the trial court and thus avoid unnecessary delay as well as expense. Many of the "delays of the law" frequently commented on by newspapers and taxpayers are directly traceable to such dilatory statutes as the provision under consideration, and the courts are powerless to furnish relief, the remedy being with the legislature.

The complaint in the case under consideration states many things that could have been left out; and, taking it in its entirety, it is possible that a motion to make it more definite and certain or a special demurrer would have been sustained in the court below; but appellant having failed to either demur or move to make the complaint more definite and certain, and having answered, it only becomes necessary for us to determine whether there is a sufficient statement of the facts to support the judgment. In *Rush v. Newman,* 58 Fed. 158, 7 C. C. A. 136, we find a quotation from Mr. Justice Brewer, then of the supreme court of Kansas, in *Laithe v. McDonald,* 7 Kan. 261, as follows: "After answer filed, an objection to a petition that it does not state facts sufficient to constitute a cause of action is good only when there is a total

failure to allege some matter which is essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite or statements or conclusions of law.'' (Citing *Moody v. Arthur,* 16 Kan. 419.)

In *Glaspie v. Keator,* 56 Fed. 203-211, 5 C. C. A. 474, Judge Thayer, speaking for the court, said: ''The demurrer seems to have been based on the ground that the complaint was defective in not showing with sufficient certainty that any damage was sustained in consequence of the alleged defect. The point is untenable. The complaint averred generally, in the concluding paragraph, that damages had been sustained in a certain sum, which was all that the pleader was required to aver. But even if the complaint had been defective, as supposed, it was merely a technical defect. which was waived by pleading to the merits, and was cured by the verdict.'' In the opinion it is said: ''If the complaint was defective in the respect claimed, it was a defect which plaintiff had a right to remedy by amendment, and such defects are cured by the verdict.''

In the case of *Board of Commrs. of Hamilton Co. v. Sherwood,* 64 Fed. 103 (11 C. C. A. 507), at page 105 of the opinion, it is said: ''The first point urged upon our attention is that a demurrer interposed to the petition on the ground that it did not state a cause of action should have been sustained, because there was no averment found in the petition that when the suit was commenced the county treasurer had money sufficient to pay the warrants, or that a sufficient time had elapsed for the collection of money wherewith to pay them. We need not stop to determine the merits of this contention, because the record shows that the county did not stand upon its demurrer when it was overruled, but answered the petition, and entered into a long, expensive and tedious trial, whereby it waived the point raised by the demurrer, even if it had merit.'' A similar question is discussed in Encyclopedia of Pleading and Practice, volume 14, page 334, and cases cited; *House v. Myer,* 100 Cal. 592, 35 Pac. 308; *Stephenson v. Southern Pacific Ry. Co.,* 102 Cal. 143, 34 Pac. 618, 36 Pac. 407; *Aulbach v. Dahler,* 4 Idaho, 654, 43 Pac.

322; *Hollister v. State,* 9 Idaho, 651, 77 Pac. 339. There seems to be so much reason, justice and equity in this rule that we can see no reason why it should not be followed, especially where it is shown that the defendant did not even file a demurrer, but answered to the merits, denying that there were any defects whatever in the machinery and averred that the injury was the result of defendant's own carelessness and negligence, and thus took his chances in the court below if he was successful in the trial, but reserved his right to object to the sufficiency of the complaint in case the verdict of the jury was adverse to him. Even under our statute this practice should not be encouraged, and if this court can find in the complaint any reason for holding it sufficient it should not hesitate to do so, and rather give the respondent the benefit of the doubt than to reverse the judgment and put the parties to another long, expensive trial.

Mr. Justice Sullivan, speaking for this court, in *King v. Oregon Short Line R. R. Co.,* 6 Idaho, 306, 55 Pac. 665, 59 L. R. A. 209, says: "It is conceded by counsel for appellant that the complaint in this action would be good against a general demurrer, to wit, a demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of action, and that it is sufficient to sustain a verdict or judgment, unless attacked by a demurrer on the ground of uncertainty, specifically setting forth wherein it is uncertain." If we follow the rule laid down here, it is conclusive of the case at bar. If a complaint that states "that defendant so carelessly and negligently ran and managed its locomotives and cars" is a sufficient statement of facts to warrant a recovery, unless a special demurrer is interposed, the complaint in the case at bar is good against an objection in this court that the complaint does not state a cause of action.

Again, it is said in *King v. Oregon Short Line R. R. Co., supra,* after quoting from *Stephenson v. Southern Pac. Co.,* 102 Cal. 143, 34 Pac. 618, 36 Pac. 407: "So we think in the case at bar the complaint sufficiently states a cause of action, except as against a special demurrer on the ground of uncertainty."

From a consideration of all the authorities to which our attention has been called, the prevailing rule seems to be that if the defendant fails to demur to the complaint the appellate court will not reverse a judgment on an objection that the "complaint does not state a cause of action," where it is shown by the record that the complaint does state that the injury complained of was the direct result of the negligent and careless construction and management of the property of appellant, and calls attention to the particular portion of such property that was badly constructed and managed and resulted in the injury of respondent.

We think the judgment should be affirmed, and it is so ordered.    Costs awarded to respondent.

Ailshie, J., and Sullivan, J., concur.